Richland School District, Appellant *v.* Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Appellee.

46

Argued October 4, 1982, before Judges ROGERS, BLATT and CRAIG, sitting as a panel of three.

*Ralph F. Kraft,* for appellant.

*James L. Crawford,* with him *Anthony C. Busillo, II,* for appellee.

*William Fearen,* with him *Michael I. Levin, Cleckner and Fearen,* for Amicus Curiae, Pennsylvania School Boards Association.

OPINION BY JUDGE ROGERS, January 6, 1983:

Richland School District seeks review of an order of the Pennsylvania Labor Relations Board (PLRB) requiring it to bargain collectively with the Richland School Service Personnel Association (new union),

the exclusive representative of a unit of the district's nonprofessional employees. The question presented is that of whether a public employer may lawfully refuse to bargain with a newly certified union after the employer and a predecessor union have entered into a collective bargaining agreement covering the period of time concerning which new negotiations are requested.

The facts, contained in a stipulation of the parties, are as follows. In 1970 the Richland Service Employees Association (old union) was certified by the PLRB as the representative of a unit of the school district's workers including maintenance employees, custodians, matrons, cooks and secretaries. A series of collective bargaining agreements were thereafter negotiated by the old union and the district with the penultimate agreement expiring on June 30, 1979. On January 10, 1979 the old union and the district began negotiations which culminated in March in a two-year agreement intended to govern the terms and conditions of employment of members of the bargaining unit for the period between July 1, 1979, and June 30, 1981. This agreement was ratified first by the old union on March 14, 1979, and was then ratified by the district and executed by both parties on April 18, 1979. Meanwhile, on April 12, 1979, the new union filed a Representation Petition with the PLRB and, following notice sent to the district on April 19, 1979, and the execution by the district and the new union of a pre-election Memorandum of Agreement, a representation election was conducted on June 11, 1979, at which time sixty-three of the seventy members of the bargaining unit cast ballots and forty of the ballots cast indicated a preference to be represented for purposes of collective bargaining by the new union. Certification by the PLRB followed.

By letter dated June 27, 1979, Mr. Robert F. Ward, regional field director for the new union's statewide affiliate, notified the district that the membership of the new union had, on June 21, 1979, ''overwhelmingly rejected the tentative agreement reached between the [old union] and the district prior to the election. . . .'' Mr. Ward then requested, on behalf of the new union, the setting of ''a date in early July to commence negotiations of a successor contract to that which expires on June 30, 1979.''

The school district's response, by its counsel, to the request for negotiations is, in its entirety, as follows:

June 29, 1979

Re: Richland School Service
Personnel Association

Dear Mr. Ward:

This will advise you that there is no tentative agreement between the Richland School Employees Association and the School District. Rather, on April 18, 1979 the officers of the Service Employes Association and the Richland School Board executed and signed and formerly ratified a two-year contract from July 1, 1979 to June 30, 1981.

This contract was the result of good faith negotiations which began on January 10, 1979 and were formally concluded on April 18, 1979.

There is absolutely nothing tentative about the ratified and signed contract. There is nothing to discuss relative to contract terms. The formal contract specifies the terms and conditions of employment for the period covered.

The Richland School District stands ready and intends to implement all the terms and

conditions contained in said contract beginning July 1, 1979. *No further negotiations are anticipated until January of 1981.* The Richland School District expects the service employees to abide by and to work under the terms of the contract signed on April 18, 1979.

The document to which you refer was the result of the collective bargaining process begun in January of 1979 and in no way is a unilateral application or implementation of an agreement. That a new bargaining agent was selected 53 days after the signing of a contract does not make that signed contract a nullity. Your members will be expected to work under and abide by the contract they negotiated and ratified. (Emphasis added.)

The union charged, and the PLRB, affirmed by the Court of Common Pleas of Cambria County determined, that this response to the new union's request to negotiate constituted an unlawful refusal to bargain in good faith within the meaning of Section 1201(a)(5) of the Public Employee Relations Act, Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §1101.1201(a)(5). The school district here challenges that determination.

We must first note that the school district has presented its challenge narrowly. No exceptions were filed to the PLRB's June 27, 1979, Nisi Order certifying the new union and, therefore, we may not now inquire into the propriety of that certification. On this point, however, PERA Section 605(7)(ii), 43 P.S. §1101.605(7)(ii) creates a thirty day "window period" beginning ninety days prior to the date of the expiration of a collective bargaining agreement during which the otherwise operative "contract bar" is not effective and rival unions may file representa-

tion petitions with the PLRB. The new union's representation petition was apparently properly filed during the window period which began ninety days prior to the June 30, 1979 expiration date of the penultimate agreement between the school district and the old union.

Additionally, at oral argument before this Court counsel for the parties expressed conflicting views as to the proper resolution of the issue of whether, under PERA Sections 801-804, 43 P.S. §§1101.801-1101.804, a public employer must respond affirmatively to a union's request for negotiations first made less than one hundred and fifty days prior to the employer's budget submission date but we believe this issue has not been preserved. PERA's negotiating timetable provisions played no express part in the school district's response to the new union's request to negotiate. As the letter of its counsel shows, the school district refused to bargain because it had previously concluded successful negotiations with the old union and not because the new union's request was untimely with reference to PERA Sections 801-804 and the district's budget submission date. Moreover, the district's budget submission date is not specified in the party's stipulation or elsewhere in the record and, indeed, the district's refusal to bargain covered a two-year period until January of 1981 and, therefore, could not be justified with reference solely to the timing of the request in the 1979 fiscal year. Finally, the single question the appellant presents on the occasion of this appeal refers only to the extent of an employer's duty to negotiate "with a successor union during the existence of a ratified collective bargaining agreement. . . ."

We therefore decline to express our views on the application of PERA Sections 801-804 to these facts

beyond indicating the obvious, that PERA's time-table concerns only the points in the public employer's fiscal year beyond which the employer may not be required to submit a bargaining impasse to those dispute resolution mechanisms (mediation and fact-finding) which must be exhausted before the public employees may lawfully strike under PERA Section 1003, 43 P.S. §1101.1003. This timetable is expressly made mandatory. PERA Section 801, 43 P.S. §1101.801. *See Berks County v. Pennsylvania Labor Relations Board,* 66 Pa. Commonwealth Ct. 618, 445 A.2d 860, 863 n. 4 (1982); *United Transportation Union v. Southeastern Pennsylvania Transportation Authority (SEPTA),* 22 Pa. Commonwealth Ct. 25, 347 A.2d 509 (1975). These provisions nowhere address or limit the public employer's duty to *negotiate;* that is, "to meet at reasonable times and confer in good faith with respect to wages, hours and other terms and conditions of employment. . . .," PERA Section 701, 43 P.S. §1101.701. However, the parties to negotiations conducted on the eve of the employer's budget submission date are, it seems to us, precluded by PERA Sections 801-804 from insisting over the objection of their bargaining counterpart, that an impasse in the negotiations be submitted to mediation or fact-finding. In any event, this question would appear to be entirely academic here as the requested negotiations at issue were intended to produce a collective agreement effective in July, 1979.

With respect to the question of whether a public employer may lawfully refuse to negotiate with a newly certified union during the term of a collective agreement negotiated with the union's predecessor, the PLRB concluded that such a refusal is unlawful on the basis of authorities in the private sector holding that a newly certified union is not bound by its

predecessor's contract and that the employer must bargain with the new union. *National Labor Relations Board v. Burns International Security Services*, 406 U.S. 272, 284 n. 8 (1971); *Modine Manufacturing Company v. Grand Lodge of Machinists*, 216 F.2d 326 (6th Cir. 1954); *Consolidated Fibreglass*, 242 N.L.R.B. 7, 101 L.R.R.M. 1089 (1979); *American Seating Company*, 106 N.L.R.B. 250, 32 L.R.R.M. 1439 (1953). For example, the Court in *Burns* decided that an employer succeeding as a consequence of competitive bidding to the job of providing protective services at an industrial plant was not bound by the collective bargaining agreement negotiated by the employees and the predecessor employer. The Court reasoned, in part, that a contrary result would be anomolous in the light of the principle that

> [w]hen the union that has signed a collective-bargaining contract is decertified, the succeeding union certified by the Board is not bound by the prior contract, need not administer it, and may demand negotiations for a new contract, even if the terms of the old contract have not yet expired. American Seating Co., 106 NLRB 250 (1953). . . . The Board has declined to overturn its "long standing" American Seating rule after Burns. General Dynamics Corp., 184 NLRB No. 71 (1970) (citations omitted).

*Burns, supra,* 406 U.S. at 284 n. 8.

The school district and the amicus curiae Pennsylvania School Boards Association argue that the PLRB erred in giving controlling effect to these authorities because of asserted differences between public sector and private sector collective bargaining. The PLRB responded to this argument as follows:

The Employer suggests that, in this instance decisions of the NLRB are inapplicable as they are concerned with private employment. Our Supreme Court has held on numerous occasions that where a provision of PERA is similar to NLRA, the Court will look to federal decisions for guidance. . . . Additionally, we believe that here there is no meaningful difference in the policy of PERA and the NLRA as both seek to promote and encourage the rights of employees to organize and engage in the procedure of collective bargaining. . . . It could be argued that, as an extension of [PERA] Section 801's effort to promote stability, a newly certified representative should be bound by a successor agreement entered into between the Employer and the Incumbent. However, we do not agree. While we note the importance of promoting stability, it is not the function of this Board to maintain the status quo for the Employer because it satisfied its statutory obligation to bargain with the Incumbent; a change in representatives is part and parcel of labor relations (citations omitted).

Our scope of review is limited to determining whether the PLRB's conclusions are reasonable and not arbitrary, capricious or illegal. *Pennsylvania Labor Relations Board v. Kaufmann Department Stores, Inc.,* 345 Pa. 398, 29 A.2d 90 (1942); *Western Psychiatric Institute v. Pennsylvania Labor Relations Board,* 16 Pa. Commonwealth Ct. 204, 330 A.2d 257 (1974) *allocator refused* February 28, 1975. Additionally, we remain mindful that the PLRB possesses administrative expertise in the area of public employee labor relations and that great deference ought to be given to the PLRB's assessment of the often

competing concerns relevant to the issue of whether the conduct of an employer or a union constitutes a refusal to meet the mutual obligation to bargain in good faith. The application of private sector authorities is entirely reasonable in this context as is the PLRB's conclusion that it would not promote labor peace for an incumbent union to be permitted to bind its successor to a multi-year collective agreement entered into on the eve of the incumbent union's decertification.

The PLRB further argues that inasmuch as PERA Section 605 explicitly creates a mechanism by which employees may, during the brief window period, seek new union representation, it must follow that the representative newly chosen by the employees will have the power to compel negotiations for a new collective agreement. This is precisely the rationale of the National Labor Relations Board in the *American Seating Company* case, restated in *Consolidated Fibreglass* as follows:

> Since the recently certified Union was not a party to the [collective bargaining agreement] we will require full collective bargaining on all mandatory subjects between [the employer] and the Union. Otherwise, the policing of "insuring to employees the right at reasonable intervals of reappraising and changing if they so desire, their union representation" would be undermined (footnote omitted).

*Id.* 101 L.R.R.M. at 1090 quoting *American Seating,* 106 N.L.R.B. at 255.

The appellant has brought to our attention no contrary authority and while repeated emphasis is given to the fact that the old union ratified the agreement shortly before its repudiation by the new union, the factual particulars of that ratification are not

revealed by the evidence of record and we note that the ratification of a collective agreement may be accomplished without the concurrence of the general membership. *Pennsylvania Labor Relations Board v. Eastern Lancaster County Education Association,* 58 Pa. Commonwealth Ct. 78, 427 A.2d 305 (1981).

Order affirmed.

### ORDER

AND Now, this 6th day of January, 1983, the order of the Court of Common Pleas of Cambria County in the above-captioned matter is affirmed.