538 A.2d 585

Mars Area Association of School Service Personnel, PSSPA/PSEA, Appellant *v.* Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Appellee.

Argued October 5, 1987, before Judges MACPHAIL and COLINS, and Senior Judge KALISH, sitting as a panel of three.

*William J. Maikovich,* for appellant.

*John B. Neurohr,* with him, *James L. Crawford,* for appellee.

*Charles E. Steele,* with him, *Stephen H. Kaufman, Kirkpatrick & Lockhart,* for amicus curiae, Mars Area School District.

MEMORANDUM OPINION BY JUDGE COLINS, December 30, 1987:

Appellants, Mars Area Association of School Service Personnel (Association) appeals from an order of the Court of Common Pleas of Butler County which affirmed the Pennsylvania Labor Relations Board's (Board) decision that the Mars Area School District (District) bargained in good faith with the Association pursuant to the provisions of the Public Employe Relations Act (Act), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§1101.101-1101.2301.

The Association filed a charge of unfair practices with the Board alleging that the District did not bargain in good faith with the Association prior to subcontracting its transportation services. The facts of this case, which are not in dispute, are as follows:

The Association is the certified bargaining representative of the non-professional employees of the School District. These employees include the School District's transportation employees. The District and the Associa-

tion were parties to a collective bargaining agreement covering these employees. The agreement had an expiration date of June 30, 1984.

The parties met on February 8, 1984, for the first time to negotiate a successor collective bargaining agreement. In February, 1984, the District's Board of Directors instructed its chief negotiator to investigate whether or not it could save money by subcontracting its transportation services.

During a February 28, 1984, meeting between the parties, the District formally notified the Association that it was contemplating subcontracting its transportation services and agreed to provide the Association with specifications and other pertinent information regarding the subcontracting issue. The District also informed the Association of its desire to receive and consider counterproposals designed to reduce operational costs and maintain the transportation services in-house.

On April 27, 1984, the District received a bid from A.J. Myers and Sons, Inc. (Myers) for the performance of services for the next three school years.

On May 7, 1984, the District presented the Association with an account of its in-house transportation costs. Following that, ten bargaining sessions were held between the Association and the District, wherein the parties negotiated the costs and benefits of subcontracting transportation services or retaining the work in-house by Association-represented employees.

Throughout these negotiations, the District maintained that the Association's proposals should account for the proceeds that the District would realize from the sale of its buses and spare parts, the interest the District would earn on the proceeds, the income from the rental of its bus garage if transportation services were subcontracted, and the cost of replacing two buses each year if its transportation services remained in-house.

The District made at least three counter-proposals during the course of the negotiations by which the transportation services would remain in-house, and not be subcontracted. Each of these proposals contained an inflation clause which protected the employer in the event that the actual cost of in-house transportation services exceeded proposed costs by Ten Thousand Dollars ($10,000.00).

The District asked Myers to extend the deadline on accepting its bid beyond its original deadline. Myers set a new deadline of July 16, 1984.

On July 13, 1984, the Association made its last counter-proposal which was approximately Three Thousand Dollars ($3,000.00) less than the cost of Myers' bid, but did not take into account the interest income from the proceeds of the sale of the bus fleet and spare parts, the cost of overtime for bus drivers, or the cost of the substitutes for bus drivers on sick leave. The Association's proposal did not include the inflation clause proposed by the District. The Association's final proposal was considered on July 16, 1984, by the District's Board of Directors who thereafter voted seven to one to subcontract its transportation services to Myers.

The Association argues that the District did not bargain in good faith because it refused to accept the Association's final proposal which, the Association contends, "beat" the subcontract bid. We disagree, and, for the reasons stated herein, we affirm the finding that the District bargained in good faith.

Section 1101.1201(a)(5) of the Act provides: "(a) Public employers, their agents or representatives are prohibited from: (5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative."

This Court has interpreted "good faith" in collective bargaining cases to mean "that the parties must make a serious effort to resolve differences and reach a common ground." *Minersville Area School District v. Pennsylvania Labor Relations Board,* 85 Pa. Commonwealth Ct. 506, 475 A.2d 962 (1984).

Our scope of review concerning decisions of the Board is limited to a determination of whether the findings of fact are supported by substantial evidence and whether conclusions drawn from those findings are reasonable. *Teamsters Local Union 77 v. Pennsylvania Labor Relations Board,* 89 Pa. Commonwealth Ct. 388, 492 A.2d 782 (1985). We are mindful that the Board:

> possesses administrative expertise in the area of public employee labor relations and that great deference ought to be given to the PLRB's assessment of the often competing concerns relevant to the issue of whether the conduct of an employer or a union constitutes a refusal to meet the mutual obligation to bargain in good faith.

*Richland School District v. Pennsylvania Labor Relations Board,* 71 Pa. Commonwealth Ct. 45, 53-54, 454 A.2d 649, 652 (1983).

> In the instant case, the hearing examiner noted: The District kept the Association fully apprised of all subcontracting developments, presented at least three counter proposals under which transportation services would have remained in-house, modified its bargaining position on a number of points at the bargaining table (*e.g.* overhead for secretaries, projected wage taxes, pattern for buying buses) and met with the Association at reasonable times.

Further, as the Board aptly noted, the District asked Myers to extend his deadline on accepting the bid beyond the original deadline "so that the Association would have more time to meet the subcontractor's bid."

In *Minersville,* the School District, without informing the Association, began to solicit bids from private contractors after only one meeting with the Association, even though the Association indicated a willingness to cooperate. We found a failure to bargain in good faith on the part of the School District in that case.

In the instant matter, the District demonstrated a willingness, on many occasions, to negotiate with the Association and was completely forthright with the Association regarding its position on subcontracting.

We agree with the Board that the District's rejection of the Association's proposal did not constitute bad faith in bargaining.

Accordingly, we affirm the order of the Court of Common Pleas of Butler County.

## ORDER

AND NOW, this 30th day of December, 1987, the order of the Court of Common Pleas of Butler County in the above-captioned matter is hereby affirmed.