553 A.2d 1030

American Federation of State County and Municipal Employees, District Council 83, AFL-CIO, Appellant v. Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Appellee

Argued October 31, 1988, before Judges CRAIG and PALLADINO, and Senior Judge NARICK, sitting as a panel of three.

*Jonathon Walters*, with him, *Gary Gordon*, and *Alaine S. Williams*, *Kirschner, Walters & Willig*, for appellant.

*John B. Neurohr*, with him, *James L. Crawford*, for appellee.

OPINION BY JUDGE PALLADINO, January 30, 1989:

American Federation of State, County, and Municipal Employees, District Council 83, AFL-CIO (AFSCME) appeals an order of the Court of Common Pleas of Huntingdon County (trial court) dismissing AFSCME's appeal from a decision of the Pennsylvania Labor Relations Board (Board) refusing to issue a complaint against Huntingdon County (Employer). We affirm.

AFSCME was the exclusive bargaining representative for a unit of prison employees in Huntingdon County. AFSCME and Employer were parties to a collective bargaining agreement. When the agreement expired, the parties engaged in negotiations for a successor agreement, but were not able to reach an agreement. After the parties submitted to mediation, a state mediator on December 19, 1983 declared that AFSCME and Employer had reached an impasse and directed the parties to proceed to binding interest arbitration as provided for in section 805 of the Public Employee Relation Act (PERA), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.805.[1]

On January 9, 1984, the Independent Correctional Officers of Pennsylvania, Lodge No. 3 (ICOP) filed a representation petition with the Board seeking to represent the employees in the unit in question.[2] On Febru-

---

[1] Section 805 provides that notwithstanding any other provisions of PERA, where representatives of units of guards at prisons or mental hospitals or units of employees directly involved with and necessary to the functioning of the courts of this Commonwealth have reached an impasse in collective bargaining and mediation as required in section 801 has not resolved the dispute, the impasse shall be submitted to binding interest arbitration.

[2] Section 605(7)(ii) of PERA provides that petitions for elections may be filed with the Board not sooner than ninety (90) days nor later sixty (60) days *before* the expiration of a collective bargaining agreement or *after* the expiration of the collective bargaining agreement

ary 6, 1984, the Board issued an order and notice of pre-hearing conference on the representation petition. On February 27, AFSCME requested Employer to select an arbitrator, but Employer refused.[3] Accordingly, on March 16, 1984, AFSCME filed unfair labor practice charges, alleging that Employer had violated sections 803 and 1201(a)(1), (2), and (5) of PERA.[4] Specifically, AFSCME contended that Employer's refusal to select an arbitrator and proceed to binding interest arbitration constituted an unfair labor practice.

By letter dated March 23, 1984, the Secretary of the Board declined to issue a complaint, concluding that Employer had not committed an unfair labor practice by refusing to select an arbitrator since there was a pending

---

until such time as a new agreement is entered into. 43 P.S. §1101.605(7)(ii).

[3] Section 806 of PERA provides that the arbitration panel referred to in section 805 shall be comprised of three persons. Each party is to select one member of the panel and mutually agree on the third member. If the parties are unable to agree on the third member within ten days from the date of selection, the Board shall submit a list of seven names. Each party, beginning with the public employer, shall alternately strike one name until one name remains. That individual shall be the third member and chairman of the arbitration panel. 43 P.S. §1101.806.

[4] Section 803 states that a refusal to submit to mediation or the fact-finding procedure, as set forth in section 801 and 802 of PERA, shall constitute a refusal to bargain in good faith and an unfair labor practice. 43 P.S. §1101.803. Section 1201(a)(1) provides that a public employer commits an unfair labor practice by interfering with, restraining, or coercing employees in the exercise of rights guaranteed under Article IV of PERA. 43 P.S. §1101.1201(a)(1). Section 1201(a)(2) states that an employer's domination of or interference with the formation, existence, or administration of any employee organization shall constitute an unfair labor practice. 43 P.S. §1101.1201(a)(2). Section 1201(a)(5) provides that an employer's refusal to bargain collectively in good faith with the exclusive bargaining representative of employees in an appropriate unit shall constitute an unfair labor practice. 43 P.S. §1101.1201(a)(5).

question of representation at the time Employer was requested to choose an arbitrator. The Secretary noted that a question of representation is deemed to exist as of the date of the Board's notice that it will proceed to process a representation petition. The Secretary determined that because AFSCME requested Employer to select an arbitrator *after* the Board's order and notice of pre-hearing conference on the petition, Employer was under no obligation to comply with AFSCME's request.

AFSCME filed exceptions to the Secretary's decision, which were dismissed by the Board by order dated February 13, 1985. On the same date, the Board also issued a final order certifying ICOP as the exclusive bargaining representative of the prison guard unit previously represented by AFSCME.[5] *Huntingdon County,* 16 Pa. Pub. Employee R. ¶16059 (1985). AFSCME appealed to the trial court, which affirmed the decision of the Board by order dated December 3, 1987.

On appeal to this court, AFSCME contends that the Board erred as a matter of law and abused its discretion in refusing to issue a complaint upon the filing of unfair labor practice charges. AFSCME asserts that the filing of a representation petition by a rival union should not abridge the right of an incumbent union to proceed to binding interest arbitration. AFSCME argues that because the unit employees are statutorily prohibited from striking,[6] the incumbent union and unit employees should be given the protection of mandatory interest arbitration once an impasse is reached in the collective bargaining process, regardless of whether a representa-

---

[5] A secret ballot election was held on July 9, 1984 at which ICOP received twelve (12) votes and AFSCME received zero (0) votes.

[6] Section 1001 of PERA prohibits strikes by guards at prisons or mental hospitals or by employees directly involved with and necessary to the functioning of the courts. 43 P.S. §1101.1001.

tion petition has been filed by a rival union. AFSCME also contends that the Board erroneously relied upon cases in which representation petitions were filed *before* an incumbent union and public employer reached a bargaining impasse.

Initially, we note that the certification of ICOP as the exclusive bargaining representative of the unit in question renders moot the issues which AFSCME has raised. However, "where, as here, there is a question of significant dimension that is capable of repetition yet evading review, the mootness doctrine need not bar the action." *Reichley v. North Penn School District,* 113 Pa. Commonwealth Ct. 528, 532, 537 A.2d 391, 393 (1988).

In this case, the Board determined that Employer correctly refused to appoint an arbitrator because at the time AFSCME requested Employer to choose a member of the arbitration panel, a question of representation existed. The Board, in so holding, reaffirmed its adherence to the position taken by the National Labor Relations Board (NLRB) in *Midwest Piping and Supply Co.,* 63 N.L.R.B. 1060 (1945). In *Midwest Piping,* the NLRB held that an employer commits an unfair labor practice if the employer continues to bargain with an incumbent union after a question of representation arises. The NLRB determined that continued bargaining, in the face of conflicting representation claims, breaches the employer's obligation of neutrality.

The *Midwest Piping* decision was subsequently reversed by the NLRB in *RCA Del Caribe, Inc.,* 262 N.L.R.B. 963 (1982). The majority in *RCA Del Caribe* held that the mere filing of a representation petition by a rival union no longer requires or permits an employer to withdraw from bargaining or enter into a new agreement with the incumbent union. The NLRB further stated that an employer *does* commit an unfair labor practice by

withdrawing from bargaining solely because a represen-
tation petition has been filed by another union.

The Board in the instant case declined to follow the
NLRB decision in *RCA Del Caribe,* concluding that the
*Midwest Piping* rule, which requires an employer to
cease negotiations once a valid representation petition
has been filed, best promotes employee freedom of
choice by ensuring employer neutrality. The Board
stated that "[t]o permit continued bargaining between
the public employer and one of two rival unions ... might
well be interpreted by the employes as indicating em-
ployer approval of one organization over another thereby
according prestige to and encouraging membership in
that employe organization." Board's Final Order at 2-3
(citations omitted). We have held that the Board, in
deciding questions of state law concerning PERA, is not
bound to follow decisions of the NLRB which involve
questions purely of federal law. *See American Federation
of State, County and Municipal Employees v. Pennsylva-
nia Labor Relations Board,* 108 Pa. Commonwealth Ct.
482, 529 A.2d 1188 (1987).

AFSCME contends that the *Midwest Piping* doctrine
was erroneously applied by the Board in this case, ar-
guing that the bargaining process had already ended
because the parties reached an impasse. Thus, AFSCME
asserts that the Board has failed to distinguish between
the separate processes of negotiation and interest arbitra-
tion.

Review of the Board's decision discloses that the
Board did not ignore the distinction between the two
processes, but specifically chose to extend the *Midwest
Piping* rule to bargaining units subject to section 805
binding interest arbitration. The Board concluded that
"the same concessions and promises of benefit can occur
both during the arbitration process, when the employer

could concede an issue by the way it presents its case to the panel of arbitrators, and after the arbitration award is issued.... " Board's Final Order at 3. This court has held that the Board "'possesses administrative expertise in the area of public employee labor relations and that great deference ought to be given to the PLRB's assessment of the often competing concerns relevant to the issue of whether the conduct of an employer or a union constitutes a refusal to meet the mutual obligation to bargain in good faith.'" *Mars Area Association of School Service Personnel v. Pennsylvania Labor Relations Board,* 114 Pa. Commonwealth Ct. 152, 156, 538 A.2d 585, 587 (1987) (quoting *Richland School District v. Pennsylvania Labor Relations Board,* 71 Pa. Commonwealth Ct. 45, 53-54, 454 A.2d 649, 652 (1983)).

AFSCME argues that, by refusing to issue a complaint on the unfair labor practice charges, the Board has permitted Employer to avoid its obligations under PERA to proceed to arbitration and has placed AFSCME at a disadvantage because it could not negotiate *or* strike. We recognize that section 805 of PERA mandates interest arbitration once a public employer and the bargaining representative of prison guards reach an impasse in negotiations. In fact, the Board acknowledges that arbitration under section 805 is a substitute for a union's right to strike.

However, as the Board correctly notes in its brief, bargaining units are *also* given the right to select a different bargaining representative as provided by section 605 of PERA. The Board's decision does not permit Employer to avoid bargaining entirely, but properly balances the competing rights and interests of the parties under PERA. The employer's obligation to bargain or proceed to arbitration is merely suspended until the representation claims are resolved.

Accordingly, we affirm.

## ORDER

AND NOW, January 30, 1989, the order of the Court of Common Pleas of Huntingdon County in the above-captioned matter is affirmed.