SALISBURY TOWNSHIP, Petitioner,

v.

PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.

Commonwealth Court of Pennsylvania.

Argued Feb. 6, 1996.

Decided Feb. 29, 1996.

---

Ralph H. Colflesh, Jr., for Petitioner.

Peter Lassi, for Respondent.

Sean T. Welby, for Intervenor, Salisbury Township Police Officers' Association.

Before PELLEGRINI and FLAHERTY, JJ., and NARICK, Senior Judge.

PELLEGRINI, Judge.

Salisbury Township (Township) appeals from a decision of the Pennsylvania Labor Relations Board (PLRB) finding that the Township had engaged in an unfair labor practice by refusing to proceed to interest arbitration in violation of Sections 6(1)(a) and (e) of the Pennsylvania Labor Relations Act (PLRA), Act of June 1, 1937, P.L. 1168, *as amended,* 43 P.S. §§ 211.6(1)(a), (e), and Act 111, Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10.[1]

---

1.   While collective bargaining for police officers is governed by Act 111, 43 P.S. §§ 217.1–217.10, Act 111 must be read in *pari materia* with the PLRA because Act 111 lacks procedures concerning the recognition of collective bargaining agents as well as the collective bargaining obli-

The facts of this case are not in dispute. The Salisbury Township Police Officers Association (Association) is the exclusive representative of all of the Township's full-time police officers. On October 16, 1991, the Township and the Association entered into a collective bargaining agreement addressing the wages, hours and terms and conditions of employment for the Township's police officers for the period between January 1, 1992, and December 31, 1994. Article 9 of the collective bargaining agreement contained a reopener provision that provided as follows:

> Either party shall have the right to demand reopening of negotiations for contract year 1994 upon serving written notice to the other party no later than June 30, 1993. In the event negotiations are reopened, negotiations shall be limited to (a) the Police Association's last pension proposals, numbers 1–4 and 6–8 affecting officers hired after January 1, 1968, which were presented during negotiations for the within Agreement; and, (b) the Township's last health insurance proposals which were presented during negotiations for the within Agreement.

Pursuant to the reopener provision of the collective bargaining agreement, the Association hand delivered a letter to the Township on June 30, 1993, notifying the Township of its intent to commence collective bargaining as to its pension proposals. On July 7, 1993, the Township responded to the Association's request for bargaining by agreeing to hold a meeting on August 4, 1993. In its response, the Township set forth its proposals for health insurance coverage that it wished to address during the collective bargaining process.

At the August 4, 1993 meeting, the Association informed the Township that the proposals set forth in its July 7 letter were untimely under the reopener provision of the collective bargaining agreement and refused to bargain with the Township on those issues. The

Association subsequently requested the Township to schedule another bargaining session to address only the pension proposals. The Township responded by indicating that it would be willing to meet and discuss the issues under the reopener provisions, but only if both parties' proposals were to be addressed. On September 1, 1993, the Association notified the Township that it intended to proceed to Act 111 interest arbitration, setting forth only the pension issues as being in dispute. The Township refused the Association's request to proceed to binding arbitration, stating that such a request was without a basis in the law.

■ The Association then filed a charge of unfair labor practice against the Township with the PLRB. Based upon the facts set forth above, the hearing examiner issued a proposed decision and order finding that the Township committed unfair labor practices under Section 6(1)(a) and (e) of the PLRA and Act 111 by refusing to engage in interest arbitration with the Association. The PLRB, overruling the Township's exceptions, adopted the proposed decision and order. The Township appeals to this Court.[2]

■ The Township initially contends that Act 111 interest arbitration is not applicable to the reopener provision because it involves voluntary mid-term negotiations, and because it does not specify that the provisions of Act 111 are to govern. We observe, however, that Article 9 of the collective bargaining agreement closely mirrors Section 3 of Act 111. That section provides that:

> Collective bargaining shall begin at least six months before the start of the fiscal year of the political subdivision ... and any request for arbitration, as hereinafter provided, shall be made at least one hundred ten days before the start of said fiscal year.

Act of June 24, 1968, P.L 237, § 3, 43 P.S. § 217.3. Under Section 3, if, as here, a

---

gations of employers and collective bargaining agents. *Philadelphia Fire Officers Association v. Pennsylvania Labor Relations Board,* 470 Pa. 550, 369 A.2d 259 (1977).

2. Our scope of review is limited to determining whether there was a violation of constitutional

rights, an error of law, or whether the PLRB's findings of fact are not supported by substantial evidence. *Township of Upper Saucon v. Pennsylvania Labor Relations Board,* 152 Pa.Cmwlth. 530, 620 A.2d 71 (1993).

township's fiscal year begins on January 1, then a request to engage in collective bargaining must be made on or before July 1 of the previous year. *Cheltenham Township Police Association v. Cheltenham Township,* 152 Pa.Cmwlth. 338, 618 A.2d 1234 (1992).

In the present case, Article 9 provides for the reopening of negotiations for the 1994 fiscal year no later than June 30, 1993, six months before the start of the 1994 fiscal year. Moreover, the subjects of Article 9, i.e., the pension and health insurance proposals, are clearly terms and conditions of employment. In effect, the parties to the collective bargaining agreement did, in fact, agree to engage in collective bargaining over the pension and health insurance proposals. As such, the provisions of Act 111 do apply to Article 9, and a statutory duty to bargain in good faith was imposed upon the Township irrespective of whether or not the request to reopen negotiations occurred mid-term. *Cf. Commonwealth v. Pennsylvania Labor Relations Board,* 64 Pa.Cmwlth. 84, 438 A.2d 1061 (1982) (involving the enforcement of an interest arbitration award that was rendered during an impasse in mid-term negotiations).

The Township then argues that, even if Act 111 does apply to the reopener provision of the collective bargaining agreement, interest arbitration is inapplicable to the present case because the parties had not yet engaged in collective bargaining, and therefore, could not have reached an impasse. Having not reached an impasse, the Township argues, the Association's demand to submit the issue to interest arbitration was premature.[3]

■ Pursuant to Section 4(a) of Act 111, "[i]f in any case of a dispute between a public employer and its policemen or firemen employes the *collective bargaining process* reaches an impasse or stalemate ... then either party to the dispute, after written notice to the other party containing specifications of the issue or issues in dispute, may request the appointment of a board of arbitrators." Act of June 24, 1968, § 4(a), 43 P.S. § 217.4(a) (emphasis added). An impasse or stalemate is defined under Section 4(a), which provides that "an impasse or stalemate shall be deemed to occur *in the collective bargaining process* if the parties do not reach a settlement of the issue or issues in dispute by way of a written agreement within thirty days *after collective bargaining proceedings have initiated.*" 43 P.S. § 217.4(a) (emphasis added). Moreover, the collective bargaining process is deemed to have begun once a party has requested collective bargaining under Section 3 of Act 111, irrespective of whether the parties actually meet to discuss the terms and conditions of employment. *Bivighouse v. Borough of Telford,* 66 Pa.Cmwlth. 548, 445 A.2d 561 (1982). If the parties have not reached a written agreement indicating the settlement of the issue in dispute within thirty days after the date that collective bargaining was requested, and one of the parties demands that the matter be submitted to interest arbitration, the other party must comply with that demand. A refusal to proceed to interest arbitration constitutes an unfair labor practice. *Borough of Nazareth v. Pennsylvania Labor Relations Board,* 534 Pa. 11, 626 A.2d 493 (1993).[4]

■ In the present case, the Association requested to reopen the negotiations on its prior pension proposals on June 30, 1993. Although the parties met on several occasions to determine what issues would be subject to renegotiations under Article 9, they had not reached a written agreement evidencing their settlement of the pension issue by September 1, 1993, the date on which the

---

3. The underlying issue of this case, whether the June 30, 1993 deadline of Article 9 precludes the Township from raising its health care proposals during the renegotiations, involves an interpretation of the terms of the collective bargaining agreement. However, the Township has not raised the argument that this issue may only be resolved via grievance arbitration, thus depriving the PLRB of jurisdiction over the matter. As such, the applicability of grievance arbitration to the present case is not addressed in this Opinion.

4. Under Act 111, a party must comply with a demand to submit an issue to interest arbitration even if that party believes the issue to be an improper subject of bargaining. The determination of whether an issue is bargainable and subject to arbitration must be decided by the arbitrators in the first instance. *See Office of Administration v. Pennsylvania Labor Relations Board,* 528 Pa. 472, 598 A.2d 1274 (1991).

Association requested binding interest arbitration. Because no settlement had been reached within thirty days from the date on which the Association requested reopening of the negotiations, the parties had reached an impasse. As such, the Township was required to submit to the Association's demand to proceed to interest arbitration, and having not done so, it committed an unfair labor practice.

Accordingly, the decision of the PLRB is affirmed.

## ORDER

AND NOW, this 29th day of February, 1996, the order of the Pennsylvania Labor Relations Board at No. PF–C–93–147–E, dated May 13, 1995, is affirmed.