**PLUMSTEAD TOWNSHIP, Petitioner,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 5, 1998.
Decided June 19, 1998.

Catherine M. Harper, Ft. Washington, for petitioner.

James L. Crawford, Harrisburg, for respondent.

Before FRIEDMAN and FLAHERTY, JJ., and McCLOSKEY, Senior Judge.

FRIEDMAN, Judge.

Plumstead Township (Township) appeals from a final order of the Pennsylvania Labor Relations Board (PLRB) concluding that the Township committed unfair labor practices in violation of the Pennsylvania Labor Relations Act (PLRA)[1] and the Collective Bargaining by Policemen or Firemen Act (Act 111)[2] when the Township unilaterally discontinued allowing police officers to take their police vehicles home after completing their duty shifts. We affirm.

Beginning in the mid–1980s, the Township instituted a vehicle take home policy for Township police officers. Initially, the police chief was allowed to take a marked police car home overnight in case he needed to respond to emergencies or make arrests while off duty. (PLRB's Findings of Fact, No. 3.) Due to various circumstances, by 1994 the Township extended the vehicle take home policy to all Township police officers, allowing the officers to take police cars home after completing their duty shifts.[3] In early 1996, the Township's police chief conducted a survey to determine how often officers responded to emergency calls while off duty. (PLRB's Findings of Fact, No. 6.) After completing the survey, the police chief concluded that the vehicle take home policy no longer was warranted, and he recommended that it be discontinued. (PLRB's Findings of Fact, No. 6.) The Township decided to discontinue allowing officers to take marked police cars home in order to achieve cost savings.[4] (PLRB's Findings of Fact, No. 15.)

---

1. Act of June 1, 1937, P.L. 1168, *as amended,* 43 P.S. §§ 211.1–211.13.

2. Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10.

3. In 1988, for the first time, the Township allowed a patrol officer to take home a police car because of that officer's specialized training as an accident reconstruction specialist; the Township reasoned that the use of the police car would facilitate that officer's prompt arrival at an accident scene. Beginning in 1991 or 1992, the Township allowed all those police officers residing within the Township to take home a

marked police car while off duty because of the growth of the Township and the addition of police cars. In 1994, the Township experienced a shortage of parking during its building construction project, so the Township extended the vehicle take home policy to all police officers, regardless of their residence. After construction ceased in October 1994, the Township continued to allow all officers to take the police cars home. (PLRB's Findings of Fact, Nos. 3–4, 13.)

4. Through decreased use of the cars, the Township anticipated an increase in the useful life span of police cars and a decrease in maintenance costs. (PLRB's Findings of Fact, No. 15.)

On October 24, 1996, the Township notified all Township employees that police officers were no longer allowed to take marked police cars home after completing their scheduled shifts.[5] (PLRB's Findings of Fact, No. 7.) The Township implemented this policy on January 1, 1997. (PLRB's Findings of Fact, No. 7.)

On January 8, 1997, the Plumstead Township Police Benevolent Association (Union) filed an action against the Township, alleging that the Township engaged in unfair labor practices in violation of sections 6(1)(a), (c) and (e) of the PLRA[6] and Act 111[7] when "the Township unilaterally implemented a policy forbidding members from driving police cars to and from work and keeping them at their homes during off duty hours." (R.R. at 3a.) In response, the Township filed an answer and new matter, and a hearing was held before a PLRB hearing examiner.

On May 29, 1997, the hearing examiner issued a Proposed Decision and Order (PDO), concluding that the Township committed unfair labor practices in violation of sections 6(1)(a) and (e) of the PLRA and Act 111 because the Township unilaterally changed a mandatory subject of bargaining when it rescinded the police vehicle take home policy. (PDO of 5/29/97, Conclusion of Law, No. 4.) The hearing examiner ordered the Township to rescind the January 1, 1997 policy, reinstitute the prior police vehicle take home policy and make all bargaining unit members whole for any monetary losses suffered as a result of the January 1, 1997 policy. The Township filed timely exceptions to the PDO. On September 23, 1997, the PLRB issued a final order, sustaining in part and dismissing in part the Township's exceptions, and making the PDO final as modified.[8] The PLRB concluded that the vehicle take home policy is a mandatory subject of bargaining under Act 111, and, thus, the Township could not unilaterally rescind that policy.[9] The Township now appeals to this court.[10]

The following issues are presented for our consideration: (1) whether the Township had an obligation to bargain with the Union before discontinuing the police officers' vehicle take home policy; and (2) if so, whether the PLRB's final order proscribed a proper rem-

5. In mid-October 1996, the Township and the Plumstead Township Police Benevolent Association (Union) entered into a new collective bargaining agreement. During negotiations for that agreement, neither the Township nor the Union raised the issue of a change in the vehicle take home policy. (PLRB's Findings of Fact, Nos. 7, 9.)

6. The Union subsequently withdrew its section 6(1)(c) of the PLRA charge against the Township. Sections 6(1)(a) and (e) of the PLRA, 43 P.S. § 211.6(1)(a), (e) (footnotes omitted), provide:

**Unfair labor practices**
(1) It shall be an unfair labor practice for an employer-
(a) To interfere with, restrain or coerce employees in the exercise of the rights guaranteed in this act.

. . .

(e) To refuse to bargain collectively with the representatives of his employees, subject to the provisions of section seven (a) of this act.

7. Section 1 of Act 111, 43 P.S. § 217.1, provides:
**Right to bargain**
Policemen or firemen employed by a political subdivision of the Commonwealth or by the Commonwealth shall, through labor organizations or other representatives designated by fifty percent or more of such policemen or firemen, have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act.

8. The PLRB's final order modified the PDO only in that it amended Findings of Fact Number 7 and added Findings of Fact Numbers 13–15.

9. On October 20, 1997, the Township filed a petition for stay or supersedeas pending appellate review; the PLRB denied the petition on November 18, 1997. On January 22, 1998, the Township petitioned this court for supersedeas; on February 1, 1998, Honorable Charles P. Mirarchi issued an order granting the Township's application for supersedeas and sustaining the status quo in that the police officers have not driven marked police cars while off-duty since January 1, 1997.

10. Our scope of review is limited to determining whether there was a violation of constitutional rights, whether there was an error of law or whether the PLRB's findings of fact are supported by substantial evidence. *Salisbury Township v. Pennsylvania Labor Relations Bd.*, 672 A.2d 385 (Pa.Cmwlth.1996).

edy for the Township's violation of that obligation.

## I. *Obligation to Bargain*

Pursuant to the PLRA, an employer commits an unfair labor practice if the employer refuses to bargain collectively with the representatives of its employees. Section 6(1)(e) of the PLRA, 43 P.S. § 211.6(1)(e). Act 111, which must be construed in *pari materia* with the PLRA,[11] sets forth those subjects over which policemen have the right to bargain collectively. Specifically, policemen have the right to bargain collectively with their public employers "concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits...." Section 1 of Act 111, 43 P.S. § 217.1.

■■■ The Township first argues that the PLRB erred in concluding that the change in the vehicle take home policy is a mandatory subject of bargaining under Act 111. Whether an issue is a mandatory subject of bargaining is an important threshold determination because, once it is established that a matter is a mandatory subject of bargaining, the employer is barred from acting unilaterally without satisfaction of the statutory resolution procedure. *City of Bethlehem v. Pennsylvania Labor Relations Bd.*, 153 Pa. Cmwlth. 544, 621 A.2d 1184 (1993). Under Act 111, a matter is deemed a mandatory subject of bargaining if it bears a rational relationship to the employees' duties. *Id.*

In arguing that the vehicle take home policy is not a mandatory subject of bargaining, the Township first contends that the vehicle take home policy bears no rational relationship to the police officers' duties and that the PLRB erred in finding that the policy is a benefit directly related to the officers' duties. Relying on testimony from the Township's police chief,[12] the Township argues that it is seldom necessary for off duty police officers to respond to an emergency directly from their home, and, therefore, the vehicle take home policy is essentially a commuting service for the police officers. The Township then points out that, in *Cheltenham Township v. Cheltenham Township Police Department*, 11 Pa.Cmwlth. 348, 312 A.2d 835 (1973), we held that such a commuting service was not a benefit subject to mandatory collective bargaining under Act 111. Here, the Township's reliance on *Cheltenham Township* is misplaced.

In *Cheltenham Township*, the township had a practice of using police vehicles to pick up and deliver police officers to their homes incident to going on and off duty. We characterized the door-to-door pick up and delivery service afforded to each policeman as a transportation service which the police officers used to travel to and from work strictly on a personal basis and concluded that "[s]uch a service bears no rational relationship to performance of [the officers'] duties" and "is not ... a bargainable issue as one of 'other benefits' within the meaning of [Act 111]." *Cheltenham Township*, 312 A.2d at 839.

*Cheltenham Township* is easily distinguished from the present case. In *Cheltenham Township*, the police officer pick up and delivery service was essentially a chauffeur service to shuttle officers to and from their homes. Although the police officers here also used the police vehicles to commute to and from work, their use of the police vehicles, unlike that of the officers in *Cheltenham Township*, did not consist solely of personal use. The Township police officers, whether they are on or off duty, are required to take police action whenever they see a situation in which life is threatened, (PLRB's Findings of Fact, No. 14); therefore, retaining the police vehicles assists the police officers in carrying out their duties.

---

11. While collective bargaining for police officers is governed by Act 111, Act 111 must be read in *pari materia* with the PLRA because Act 111 lacks procedures concerning the recognition of collective bargaining agents as well as the collective bargaining obligations of employers and collective bargaining agents. *Salisbury Township.*

12. Police Chief Charles A. Penglase: In the early part of 1996, I did a survey ... to really find out how many fellows were actually called out on an emergency basis; that means red lights and siren and go immediately to the scene. I doubt if that had happened maybe twice in eight years.
(R.R. at 70–71.)

The Township repeatedly asserts that the vehicle take home policy cannot rationally be related to the police officers' duties because the officers did not frequently respond to emergencies while off duty; however, the infrequency of off duty emergency calls is not determinative because it does not affect the relationship between the vehicle take home policy and police duties. The Township's standard operating procedures (SOPs) mandate that the police officers respond to both emergency and non-emergency situations requiring police action when off duty,[13] thereby requiring off duty officers to be subject to call at all times.[14] (PLRB's Findings of Fact, No. 10.) The police vehicles that the officers take home and use to take police action are marked cars, equipped with emergency lights, audible sirens and radios to communicate with other police and county radio dispatchers. (PDO of 5/29/97 at 4.) Clearly, these police vehicles convey the identity of law enforcement officers to the public, whose cooperation may be required for officers to effectuate necessary police duties, and further the officers' safety when performing those duties.[15]

Further, we are required to give great deference to the administrative expertise of the PLRB when considering its determination that the vehicle take home policy bears a rational relationship to the police officers' duties. *See City of Philadelphia v. Pennsylvania Labor Relations Bd.*, 138 Pa.Cmwlth. 113, 588 A.2d 67 , *alloc. denied*, 528 Pa. 632, 598 A.2d 285 (1991).[16] In light of the deference owed to the PLRB, we cannot conclude under the circumstances presented here that the PLRB erred in determining that the

13. The Plumstead Township Police Department Procedural Manual of Rules and Regulations, (R.R. at 178a, 197a), provides, in part:

Section 5.24 *Off duty arrest:* Members of the Department are responsible for the enforcement of law on or off duty. This does not mean that a member must take police action in any or all neighborhood quarrels, domestic troubles, or at any other time he may be called upon while off duty. There is a definite dividing line between the situation an officer *can* handle and the situations that he *must* handle while off duty. An off duty officer shall make an arrest if a crime is committed in his presence; if life or property is threatened or if the situation is of an emergency nature that cannot wait for the arrival of on duty members.
Section 5.95 *OFF DUTY—Subject to service calls:* When off duty a member shall act immediately on notice that his services are required. Members are subject to call for duty by order of their superior officers at any time. Failure to respond when notified for extra duty shall be subject to such disciplinary action as the Chief of Police may recommend to the Supervisors.

14. Off duty officers have, in fact, used the police vehicles to take off duty police action. (PLRB's Findings of Fact, No. 10.) For example, officers have made driving under the influence arrests while proceeding to and from work. (PLRB's Findings of Fact, No. 11.) Further, when police make arrests, it is customary to have a backup unit which provides extra protection for the responding officer and, in the case of a driving under the influence arrest, the backup officer can witness the defendant's performance of field sobriety tests. The backup units are notified by radio, which are located in the police vehicles. (PLRB's Findings of Fact, No. 12.)

15. The Township police chief's testimony acknowledges that the off duty officers' use of the police vehicles enhances the performance of their duties as police officers.

Chief Penglase: [M]y perception of this is the fact that if it is sufficient enough for th[e] officer to believe that life is threatened, then yes, he would take actions. He is required by law to do such.
Hearing examiner: In his private car?
Chief Penglase: In his private car, any time he is a police officer.
Hearing Examiner: [The] question is, if that same officer is in a private car or if that same officer is in his marked police car with lights and sirens available for use, do you believe as a professional police officer, that it is safer to have that officer in a marked car with lights and sirens or to have him in his own private vehicle when he stops this supposed violator?
Chief Penglase: Well, of course, in a marked car with lights and sirens; it would be ridiculous to assume anything else.
(R.R. at 81–82a.)

16. The PLRB:

[P]ossesses administrative expertise in the area of public employee labor relations and ... great deference ought to be given to the PLRB's assessment of the often competing concerns relevant to the issue of whether the conduct of an employer or a union constitutes a refusal to meet the mutual obligation to bargain in good faith.
*City of Philadelphia*, 588 A.2d at 71 (quoting *Richland Sch. Dist. v. Pennsylvania Labor Relations Bd.*, 71 Pa.Cmwlth. 45, 454 A.2d 649, 652 (1983)).

vehicle take home policy bears a rational relationship to the police officers' duties.

In arguing that the vehicle take home policy is not a mandatory subject of bargaining, the Township next argues that the Township's decision to discontinue the vehicle take home policy was within the Township's managerial prerogative to handle its budget and effectively equip its police force in light of the Township's needs. We disagree.

■■■ Although Act 111 does not expressly provide for the reservation of management rights, *City of Philadelphia*, we recognize that Act 111 does not remove all police regulation from the scope of a municipality's managerial decision-making process; any regulation which might be considered essential for the proper and efficient functioning of a police force may remain subject to municipal management. *International Ass'n of Fire Fighters v. City of Scranton*, 59 Pa.Cmwlth. 235, 429 A.2d 779 (1981). For an issue to be deemed a managerial prerogative and, thus, not a mandatory subject of bargaining, a managerial policy concern must *substantially outweigh* any impact an issue will have on the employees. *Indiana Borough v. Pennsylvania Labor Relations Bd.*, 695 A.2d 470 (Pa.Cmwlth.1997). Whether a given subject is a managerial prerogative should be determined in the first instance by the PLRB. *Township of Upper Saucon v. Pennsylvania Labor Relations Bd.*, 152 Pa.Cmwlth. 530, 620 A.2d 71 (1993).

■■ Here, the Township asserts that by discontinuing the vehicle take home policy, it sought to maintain, manage and equip a police force of appropriate size and strength. Admittedly, however, the discontinuance of the policy was primarily designed to save the Township money by increasing the useful life span of the police cars and decreasing the maintenance costs of the police cars. (PLRB's Findings of Fact, No. 15.) However, the fact that the Township discontinued the vehicle take home policy in an effort to save money does not by itself make the issue a managerial prerogative. *See Indiana Borough* (issues otherwise bargainable under Act 111 do not become matters of managerial prerogative simply because they are motivated by fiscal concerns); *Pennsylvania Labor Relations Bd. v. Mars Area Sch. Dist.*, 480 Pa. 295, 389 A.2d 1073 (1978).

While the Township's concerns and its desire to achieve cost savings are legitimate, there are facts of record which provide substantial support for the PLRB's conclusion that these managerial concerns do not substantially outweigh the impact which the discontinuance of the vehicle take home policy had on the police officers in question. Both the hearing examiner and the PLRB recognized that the discontinuance of the vehicle take home policy affected the interests of the police officers. Because the police officers were required to take police action while off duty, the marked police vehicles increased the officers' efficiency to perform necessary police duties and furthered the officers' safety when performing those duties. (PLRB's Final Order of 9/23/97 at 4.) As such, the PLRB did not err in concluding that the discontinuance of the policy was not a managerial prerogative.

■■ Because the vehicle take home policy is rationally related to the police officers' duties and because it is not within the Township's managerial prerogative, the vehicle take home policy was a mandatory subject of bargaining. Consequently, because the Township unilaterally discontinued the vehicle take home policy without fulfilling its bargaining obligation, the Township committed unfair labor practices in violation of sections 6(1)(a) and (e) of the PLRA and Act 111.

## II. *PLRB's Final Order*

The Township next challenges the PLRB's final order which required the Township to: (1) cease and desist from violating the PLRA and from refusing to bargain collectively with the Union; (2) rescind the January 1, 1997 policy which discontinued the vehicle take home policy; (3) reinstate the vehicle take home policy; (4) make the police officers whole for any monetary losses suffered as a result of the January 1, 1997 policy; and (5) post the PLRB's orders and furnish satisfactory evidence of compliance with the PLRB's final order.

It is well established that final orders of the PLRB are to be affirmed if they are reasonable. *Appeal of Cumberland Valley Sch. Dist.*, 483 Pa. 134, 394 A.2d 946 (1978). Pursuant to the PLRA, the PLRB is empowered to prevent any person from engaging in any unfair labor practice listed in section 6 of the PLRA. Section 8(a) of the PLRA, 43 P.S. § 211.8(a). More specifically, the PLRA grants the PLRB the power to "order ... such person to cease and desist from such unfair labor practice, and to take such reasonable affirmative action ... as will effectuate the policies of this act." Section 8(c) of the PLRA, 43 P.S. § 211.8(c). When an employer has unlawfully effected a change in an employee's terms and conditions of employment without first satisfying its bargaining obligation, the usual remedy ordered by the PLRB is an order: directing the employer to cease and desist from refusing to bargain; rescinding the changed term; restoring the status quo; and making affected employees whole for any wage or benefit losses sustained as a result of the unfair labor practice. *See Cumberland Valley.* The PLRB's power to remedy unfair labor practices is remedial in nature and not punitive. *Id.*[17]

The Township argues that the remedy proscribed by the PLRB's final order is improper because it goes beyond any remedial objectives that the PLRA is designed to redress and because it affects the Township's ability to effectively manage its budget and police force in the future. First, the Town-

ship contends that the PLRB's order to make all bargaining unit members whole for any monetary losses suffered is improper and has no sound remedial purpose because the PLRB did not find that the police officers suffered any pecuniary losses that are rationally related to their police duties.[18] However, the fact that the Union has not proved economic loss due to unfair labor practices is of no consequence;[19] the PLRB concedes that if, in fact, the police officers suffered no monetary losses, then the Township's liability will be limited to reinstatement of the vehicle take home policy and collective bargaining over the matter.

Second, the Township argues that the PLRB's order to collectively bargain over the vehicle take home policy overrides the Township's ability to manage its budget and equip its police force. The Township reasons that, pursuant to the order, the Township must give a police car, valued at $17,000, to each newly hired officer for commuting purposes, thus impacting the Township's decision to hire new officers. We believe that the Township's concerns are unfounded. The final order of the PLRB states that "[s]uch an expenditure is obviously beyond the actions at issue here, which involve only the rescission of a vehicle take home [policy], and its impact on the existing work force. The [PLRB's] remedial order does not direct the [Township] to purchase new cars for any existing or prospective [police officers]." (PLRB's Final Order of 9/23/97 at 6–7.)

17. The PLRA is essentially remedial, and it " 'does not prescribe penalties or fines in vindication of public rights or provide indemnity against community losses. ...' " *W.T. Grant Co. v. United Retail Employees of America*, 347 Pa. 224, 226, 31 A.2d 900, 901 (1943) (quoting *Republic Steel Corp. v. N.L.R.B.*, 311 U.S. 7, 61 S.Ct. 77, 85 L.Ed. 6 (1940)).

18. The Township seems to argue that the PLRB's order requires the Township to reimburse one police officer for a car he purchased for commuting purposes and to reimburse another officer for the expense of building a heated garage for his patrol car. Contrary to the Township's assertions, the Township is not required to make these reimbursements; the PLRB's final order expressly states that "neither of these personal purchases constitute [sic] damages incurred as a result of the [Township's] unfair labor practice and there is no question that the [Township] is

not obligated to reimburse the cost of these items." (PLRB's Final Order of 9/23/97 at 6.)

19. The PLRB points out that any monetary loss suffered by employees is affected by two events in time: (1) the point in time when an employer takes unilateral action which may occasion loss by employees; and (2) the time of the employer's rescission of the action by the PLRB's order, reinstatement of the status quo and consequent conclusion of the period of loss. Because the Township obtained a stay of the PLRB's final order pending this appeal, the PLRB notes that it is premature to determine any loss suffered by the police officers because event (2) has not yet occurred. Once the Township complies with the PLRB's order and reinstates the vehicle take home policy, it will then be timely to ascertain the losses sustained by the police officers, if there are any.

In sum, the Township's challenge to the PLRB's "make whole" directive is unwarranted. The PLRB's order that the Township "make all bargaining unit members whole for any monetary losses suffered" is in the purest sense remedial and not punitive. *See Cumberland Valley.* In fact, the PLRB's final order directs no more than the usual and customary remedy imposed by the PLRB as a consequence of an employer taking unilateral action in violation of its collective bargaining obligation. Accordingly, we conclude that the PLRB's order is proper in that it is reasonable, remedial in nature and furthers the PLRA's policy of promoting mutual resolution of labor disputes. Because the Township committed unfair labor practices in violation of sections 6(1)(a) and (e) of the PLRA and Act 111 when it unilaterally discontinued the vehicle take home policy and because the PLRB's final order addressing the Township's unfair labor practices is proper, we affirm the final order of the PLRB.

### ORDER

AND NOW, this 19th day of June, 1998, the final order of the Pennsylvania Labor Relations Board, dated September 23, 1997, is hereby affirmed.