**LYCOMING COUNTY, Petitioner**

v.

**PENNSYLVANIA LABOR RELA-
TIONS BOARD and Teamsters
Local No. 764, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Dec. 12, 2006.
Decided Dec. 3, 2007.
Publication Ordered Feb. 26, 2008.

Warren R. Mowery, Jr., Harrisburg, for respondent, Pennsylvania Labor Relations Board.

Robert P. Curley, Philadelphia, for respondent, Teamsters Local No. 764.

BEFORE: SMITH–RIBNER and SIMPSON, Judges, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Lycoming County petitions for review of the Final Order of the Pennsylvania Labor Relations Board (PLRB) dismissing its exceptions to the Proposed Decision and Order of a PLRB Hearing Examiner in part, and making the Proposed Decision and Order absolute and final. We affirm.

Teamsters Local 764 (Union) is the exclusive representative of two units of county employees: the Assistant District Attorneys (ADAs) and the Assistant Public Defenders (APDs), and the County Detectives.[1] The County and the Union entered into collective bargaining agreements (CBAs) for these units. Upon the expiration of the CBAs, the County and the Union reached an impasse with respect to the adoption of new CBAs. Pursuant to the provisions of the Collective Bargaining by Policemen or Firemen Act (Act 111)[2], a panel of arbitrators was appointed and hearings were conducted for the impasse relating to the unit composed of the County Detectives.[3],[4]

On February 11, 2005, the panel issued an award that set forth the CBA to be

Thomas C. Marshall and Ryan M. Tira, Williamsport, for petitioner.

---

1. The County Detectives unit is composed of three detectives employed in the District Attorney's Office.

2. Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1 – 217.10.

3. Specifically, Section 4(a) of Act 111 provides, in pertinent part:

 (a) If in any case of a dispute between a public employer and its policemen and firemen employes the collective bargaining process reaches an impasse and stalemate, ... with the result that said employers and employes are unable to effect a settlement, then either party to the dispute, after written notice to the other party containing specifications of the issue or issues in dis-

effective January 1, 2005 through December 31, 2007 between the County and the Union. In particular, the panel awarded an increase in wages, benefits and taxes for the County Detectives totaling $12,731.00 over what the County had budgeted for the unit employees.[5]

 The County's Commissioners reviewed and considered the implementation of the award. However, on March 3, 2005, the Commissioners enacted a resolution implementing the non-economic aspects of the interest arbitration award determining, *inter alia,* that the implementation of the award would not be in the County's best interests, and would require "legislative action" thereby only requiring the award's implementation to be effective in the following fiscal year under Section 7(b) of Act 111.[6,7,8]

---

pute, may request the appointment of a board of arbitration ....
43 P.S. § 217.4(a).

4. Pursuant to the Public Employe Relations Act (Act 195), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301, a panel of arbitrators was appointed and hearings were conducted for the impasse relating to the unit composed of ADAs and APDs.

5. On January 4, 2005, a panel of arbitrators issued an interest arbitration award increasing the wages and benefits for the ADAs and APDs totaling more than $50,000.00 over what the County had budgeted for that unit of employees. On January 11, 2005, the County's Commissioners enacted a Resolution implementing the non-economic aspects of that award, also determining that the implementation of the award would require a "legislative enactment" and, therefore, the award was only advisory under Section 805 of Act 195, 43 P.S. § 1101.805.

6. Section 7 of Act 111 provides, in pertinent part:

(a) The determination of the majority of the board of arbitration thus established shall be final on the issue or issues in dispute and shall be binding upon the public employer and the policemen or firemen involved.... No appeal therefrom shall be allowed to any court. Such determination shall constitute a mandate to the head of the political subdivision which is the employer ... with respect to matters which can be remedied by administrative action, and to the lawmaking body of such political subdivision ... with respect to matters which require legislative action, to take the action necessary to carry out the determination of the board of arbitration.

(b) *With respect to matters which require legislative action for implementation, such legislation shall be enacted, ... in the case of a political subdivision of the Commonwealth, within one month following publication of the findings. The effective date of any such legislation shall be the first day of the fiscal year following the fiscal year during which the legislation is thus enacted.*
43 P.S. § 217.7 (emphasis added).

7. On February 3, 2005, the County filed a petition for review in the Court of Common Pleas of Lycoming County (trial court) appealing the interest arbitration award for the unit composed of the ADAs and APDs. Ultimately, on March 31, 2006, the trial court filed an order sustaining the Union's preliminary objections and dismissing the County's petition to review that award. The County's appeal of that trial court order was lodged in this Court at No. 849 C.D. 2006.

Likewise, on March 16, 2005, the County filed a petition for review in the trial court appealing the interest arbitration award relating to the unit composed of the County Detectives. Ultimately, on March 31, 2006, the trial court also filed an order sustaining the Union's preliminary objections and dismissing the County's petition to review that award. The County's appeal of that trial court order was lodged in this Court at No. 850 C.D. 2006.

8. It is well settled that this Court may take judicial notice of pleadings and judgments in other proceedings where appropriate. *Krenzel v. Southeastern Pennsylvania Transportation Authority,* 840 A.2d 450 (Pa.Cmwlth. 2003). This is particularly so where, as here, the other proceedings involve the same parties. *In re Estate of Schulz,* 392 Pa. 117, 139

On March 21, 2005, the Union filed charges with the PLRB in which it alleged that the County had committed unfair labor practices under Section 6(1)(a), (c) and (e) of the Pennsylvania Labor Relations Act (PLRA)[9] and Act 111 by failing to implement the economic aspects of the arbitration award.[10],[11] On June 24, 2005 and July 18, 2005, hearings were conducted before a PLRB Hearing Examiner on the charges.

On November 2, 2005, the Hearing Examiner issued a Proposed Decision and Order disposing of the charges. In the Proposed Decision and Order, the Hearing

A.2d 560 (1958); *In re McFarland's Estate,* 377 Pa. 290, 105 A.2d 92 (1954).

9. Act of June 1, 1937, P.L. 1168, as amended, 43 P.S. § 211.6(1)(a), (c) & (e). Section (6)(1)(a),(c), and (e) of the PLRA provides, in pertinent part:

(1) It shall be an unfair labor practice for an employer—

\* \* \*

(a) To interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act.

\* \* \*

(c) By discrimination in regard to ... any term or condition of employment to encourage or discourage membership in any labor organization. . . .

\* \* \*

(e) To refuse to bargain collectively with the representatives of his employes. . . .

10. Likewise, that same day, the Union filed charges with the PLRB in which it alleged that the County had committed unfair labor practices under Section 6(1)(a), (c) and (e) of the PLRA and Section 1201(a)(1), (3) and (5) of Act 195 by failing to implement the economic aspects of the arbitration award relating to the unit composed of ADAs and APDs. The instant unfair labor practice charges were consolidated for hearing with the charges filed under the PLRA and Act 195. The PLRB issued a Final Order in which it determined that the County's actions constituted an unfair labor practice under the PLRA and Act 195 and directed the County to, *inter alia,* implement the provisions of the award. The County filed an appeal of the PLRB's Final Order

Examiner made the following relevant findings of fact:

11. That on December 16, 2004, when the County Commissioners passed the 2005 budget they included $150,000 in their discretionary contingency fund.

12. That in 2004, the Commissioners located $203,000 that was needed to pay Robinson Aviation for unplanned air traffic controller expenses at the county airport.

13. That the line item transfers occurred routinely in county budgets. In the case of Lycoming County, they occur "a couple of times a week."

in the trial court, and the PLRB filed a petition in that court to enforce its Final Order. Ultimately, the trial court issued an order denying the County's petition for review and granting the PLRB's petition to enforce. The County's appeal of that trial court order was lodged in this Court at No. 474 C.D. 2007.

11. On May 19, 2005, the County filed a motion for dismissal and/or continuance with the PLRB in which it alleged, *inter alia,* that the filing of the petitions for review of the arbitration awards in the trial court acted as an automatic supersedeas for the appeal provisions of the awards pursuant to Pa.R.A.P. 1736. As a result, the County asserted, the failure to implement the disputed provisions of the awards could not serve as the basis for unfair labor charges due to the automatic supersedeas. Accordingly, the County asked the PLRB to either dismiss the unfair labor practice charges or, in the alternative, to continue the proceedings until the petitions for review were disposed of by the trial court. In spite of the motion, the Hearing Examiner proceeded to hearing and disposing of the unfair labor practice charges.

Likewise, on May 27, 2005, the County filed a motion for a stay/supersedeas in the trial court requesting a stay of the instant proceedings before the PLRB so that all of the claims of all parties could be considered by, and disposed of by, the trial court in the County's appeals of the arbitration awards. On June 21, 2005, the trial court issued an order denying the County's motion for a stay/supersedeas.

14. That 369 such line item transfers occurred in the last 2½ years.

15. That as a result of administrative requests, county fiscal services transferred $646,844.13, $540,933 and $211,090, respectively in 2003, 2004, and through approximately June, 2005.

16. That regarding these transfers, Director of Fiscal Services Noll or County Administrator Andy Follmer, not the county commissioners, signed off on all transfers.

17. That the County's annual budget regularly underfunds some operations or department and overfunds others. That is why every year the budget contains a contingency fund, designated Department 1094, for emergencies and underfunded expenses.

\* \* \*

19. The 2005 County budget also includes an additional unspent $200,000 for discretionary employe bonuses.

20. That the County has an available line of credit [of] $678,000 that it has not used since November, 2004.

\* \* \*

22. That the detectives unit has only 3 employes. Using the County's numbers, funding the detectives' contract would cost $12,731 over the amount the County budgeted in 2005 for detectives' raises.

23. That the 2005 County budget has projected revenues of $79 million dollars. Thus, the $12,731 needed to fund the detectives' interest arbitration award would only amount to 0.01% of the overall revenues received by the County.

Proposed Decision and Order at 2–3 (citations to the record omitted).

Based on the foregoing, the Hearing Examiner concluded that the County had violated Section 6(1)(a), (c) and (e) of the PLRA and Act 111 by refusing to imple-ment the economic aspects of the award. *Id.* at 3–5. As a result, he issued an order directing the County to, *inter alia*, "[i]mmediately comply with all provisions of the Act 111 interest arbitration award dated February 16, 2005 and make whole all members of the detectives bargaining unit for the financial portions of the Act 111 award...." *Id.* at 5.

On November 22, 2005, the County filed exceptions to that Proposed Decision and Order in which it alleged, *inter alia*, that: (1) the Hearing Examiner erred in determining that a legislative action was not required in order to implement the economic aspects of the award; (2) the Hearing Examiner erred in concluding that the County had committed unfair labor practices in violation of Section 6(1)(a), (c) and (e) of the PLRA and Act 111; and (3) the Hearing Examiner erred in failing to grant its motion for dismissal and/or continuance of the charges while the petitions for review of the awards were pending before the trial court. On November 28, 2005, the Union filed exceptions to the Proposed Decision and Order in which it alleged, *inter alia*, that the Hearing Examiner erred in failing to require the County pay the Detectives simple interest on money due under the award at the annual rate of six percent from the date of the award up to the date of payment.

On February 21, 2006, the PLRB issued a Final Order disposing of the exceptions to the Hearing Examiner's Proposed Decision and Order. Regarding the charge that the County's failure to implement the economic aspects of the award constituted an unfair labor practice, the PLRB specifically found:

The material facts are largely not in dispute. On December 16, 2004, the County Commissioners adopted a budget for 2005, including $150,000 in a discretionary contingency fund.... On

February 16, 2005, an interest arbitration award pursuant to Act 111 was issued covering the County Detectives including wages, benefits and taxes $12,731.00 over what the County budgeted for the three detectives in 2005. After the February 16, 2005 award was issued, the County Commissioners considered the arbitration award, and decided to accept the non-economic terms, but rejected the wage increases set forth in the award.... There is no dispute from the County that when the interest awards were issued the County had at least $150,000.00 of discretionary funds available, which could have been transferred to pay the interest arbitration awards for the ADA/APD and County Detective bargaining units.[4]

These undisputed facts unquestionably constitute an unfair labor practice under Act 111 and the PLRA. Under Article III, Section 31 of the Pennsylvania Constitution,[5] an Act 111 interest arbitration award is a mandate to the political subdivision to do what it must to implement the award. A public employer may not hide behind self-imposed legal restrictions to avoid giving effect to a final and binding award under Act 111....

\* \* \*

In its exceptions the County makes no justification for its refusal to comply with the Constitution, legislative, and Supreme Court mandates to implement the Act 111 interest arbitration award. Instead, it argues the unfounded and self-imposed claim that legislative action is required to fund the award, and therefore it need not comply. First, this claim is not even viable for purposes of Act 111, and, therefore, the County's

refusal to fund the Act 111 interest arbitration award for the County Detectives is, as a matter of law, an unfair labor practice in violation of Section 6(1)(a) and (e) of the PLRA, and the County's exceptions challenging the hearing examiner's conclusions in that regard are dismissed.[6]

---

4. Although the County argues that Commissioner approval was required to transfer funds from the contingency fund, Rebecca Burke, Chairman of the County Commissioners, admitted that discretionary funds were available to pay the awards, and that the transfer of funds from the contingency fund would not take a legislative action. (N.T. 240).[12] Further, there is no question that Commissioners delegated authority to the accounting department to transfer funds out of the contingency as needed.

5. Article III, Section 31 of the Pennsylvania constitution provides, in relevant part:

General Assembly may enact laws which provide that the findings of panels ... acting in accordance with law ... for collective bargaining between *policemen* ... and their public employers shall be *binding* upon all parties and shall constitute a *mandate* to the head of the political subdivision which is the employer ... with respect to matters which can be remedied by administrative action, and to the lawmaking body of such political subdivision ... with respect to matters which require legislative action, to take action necessary to carry out such findings....

6. Moreover, we agree with the hearing examiner that the County's unlawful actions were inherently destructive of employe rights to amount to a violation of Section 6(1)(a) and (c) in accordance with the [*N.L.R.B. v.*] *Great Dane Trailers, Inc.,* [388 U.S. 26, 87 S.Ct. 1792, 18 L.Ed.2d 1027 (1967)].... No specific exception to this conclusion has been

12. "N.T." refers to the transcript of the hearings *conducted* before the Hearing Examiner

on June 24, 2005 and July 18, 2005.

raised by the County and is therefore waived in these exceptions, and for further appellate review. Board Rules and Regulations § 95.98(a)(3).[13]

PLRB Final Order at 2–4 (citations and citations to the record omitted).

Regarding the Hearing Examiner's failure to grant the County's motion for dismissal and/or continuance while the petitions for review of the awards were pending before the trial court, the PLRB stated the following:

> [F]irst, the County's argument misperceives the role of a court in judicial review of appeals of Act 111 interest arbitration awards wherein it is alleged that the arbitration panel committed legal error by including provisions in an award beyond the legal authority of the panel to award, and the role of the [PLRB] to require compliance with a lawful interest arbitration award through the filing of a charge of unfair labor practices.... Clearly, the arbitration panel had authority to award the most basic matter negotiable under Section 1 of Act 111 [14] (pay) in excess of the amount previously offered by the County and the County's arguments amount to nothing more than a protest that the arbitration panel awarded more

than the County desired. Accordingly, there is no arguable claim of error in the award within the jurisdiction of the court and it was not error for the hearing examiner to not hold the charge in abeyance while the County's appeal of the award is pending in the [trial court]. Further, the [PLRB has] observed ... that generally there is no automatic supersedeas of an interest arbitration award on direct appeal to the [trial court], and absent the grant of a stay of the award by the court, the award is enforceable before the [PLRB]. Third, the County has persisted in this exception despite a June 21, 2005 order of the [trial court] filed in the appeal of the interest arbitration award, denying the County's motion for supersedeas and stay of the PLRB proceedings. Accordingly the County's exception to the Board's jurisdiction to hear the matter is dismissed.

*Id.* at 7 (citation omitted).

Regarding the award of interest, the PLRB stated the following, in pertinent part:

> [B]oth Section 8 of the PLRA [15] and Section 1303 of [Act 195 [16]] expressly

---

**13.** Section 95.98(a)(3) of the PLRB's regulations provides, in pertinent part, that "[a]n exception not specifically raised shall be waived." 95 Pa.Code § 95.98(a)(3).

**14.** Section 1 of Act 111 provides, in pertinent part:

> Policemen or firemen employed by a political subdivision of the Commonwealth ... shall, through labor organizations ... have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation....

43 P.S. § 217.1.

**15.** Section 8 of the PLRA provides, in pertinent part:

> (c) [I]f, upon all the testimony taken, the [PLRB] shall determine that any person

named in the complaint has engaged in or is engaging in any such unfair labor practice, the [PLRB] shall ... issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such reasonable affirmative action ... as will effectuate the policies of this act....

43 P.S. § 211.8(c).

**16.** Section 1303 of Act 195 provides, in pertinent part:

> [I]f, upon all the testimony taken, the [PLRB] shall determine that any person named in the complaint has engaged in or is engaging in any such unfair practice, the [PLRB] shall state its findings of fact, and issue and cause to be served on such person an order requiring such person to cease

authorize the [PLRB] to fashion a remedy which will "effectuate the policies" of the PLRA and [Act 195] and is neither limited nor must it include the relief requested by a complainant. Rather the key inquiry by the [PLRB] under Section 8 of the PLRA and Section 1303 of [Act 195] is not whether the complainant requested or the respondent opposed certain relief, but whether in the [PLRB]'s discretion such relief effectuates the policies of the PLRA or [Act 195]. Due to the fact that the County Detectives have, without justification, been denied the fair use of monies lawfully due them under the February 16, 2005 interest arbitration award, we believe interest is appropriate in order to effectuate the policies of the PLRA and Act 111 and make these employes whole.... The arbitration award was effective from January 1, 2005, and the County has withheld the pay increase from the employes during this litigation. As such, the remedy issued by the hearing examiner will be amended accordingly to include interest.

and desist from such unfair practice, and to take such reasonable affirmative action ... as will effectuate the policies of this act.... 43 P.S. § 1101.1303.

17. The trial court properly concluded that this Court possesses jurisdiction to entertain the instant appeal pursuant to Section 763 of the Judicial Code. *See, e.g., Philadelphia Housing Authority v. Pennsylvania Labor Relations Board,* 153 Pa.Cmwlth. 20, 620 A.2d 594, 597 n. 7, *petition for allowance of appeal denied,* 536 Pa. 634, 637 A.2d 294 (1993) ("[C]ommonwealth Court has direct appellate jurisdiction over appeals from the [PLRB] where charges are filed under Act 111 ... and appeals filed under [Act 195] which involve Commonwealth employees; all other appeals under [Act 195] are first filed with the courts of common pleas. 42 Pa.C.S. §§ 763, 933. *See also Delaware County Lodge No. 27 v. Pennsylvania Labor Relations Board,* 497 Pa. 319, 440 A.2d 512 (1982).").

*Id.* at 7–8. Based on the foregoing, the PLRB issued an order dismissing in part the County's exceptions to the Proposed Decision and Order and, in addition to the Hearing Examiner's order, directing the County to pay simple interest at the rate of six percent on the back pay due the County Detectives under the award. *Id.* at 8.

On March 22, 2006, the County filed a petition for review in the trial court of the PLRB's Final Order. On April 7, 2006, the PLRB filed a motion in the trial court to transfer the appeal of its Final Order to this Court on the basis that this Court possessed jurisdiction to entertain the petition pursuant to the provisions of Section 763 of the Judicial Code, 42 Pa.C.S. § 763.[17] On April 25, 2006, the Union filed a notice of its joinder with the PLRB in its motion to transfer the appeal. On July 26, 2006, the trial court issued an opinion and order transferring the appeal to this Court pursuant to Section 5301(a) of the Judicial Code, 42 Pa.C.S. § 5301(a)[18], and Rule 751(a) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 751(a).[19]

18. Section 5301(a) of the Judicial Code provides, in pertinent part:
 (a) **General Rule.**—If an appeal or other matter is taken to or brought in a court ... of this Commonwealth which does not have jurisdiction of the appeal or other matter, the court ... shall transfer the record thereof to the proper tribunal of the Commonwealth, where the appeal or other matter shall be treated as if originally filed in the transferee tribunal....
*See, e.g., Casselli v. State Police,* 146 Pa. Cmwlth. 625, 606 A.2d 663, 666 (1992) ("Accordingly, the trial court, concluding that jurisdiction lies with Commonwealth Court, should have transferred the case to this Court[pursuant to Section 5103(a) of the Judicial Code]....").

19. Rule 751(a) provides, in pertinent part:
 (a) **General Rule.** If an appeal or other matter is taken to or brought in a court ... which does not have jurisdiction of the ap-

In this appeal[20], the County claims[21]: (1) the PLRB erred in determining that the arbitration award required immediate implementation and could not be deferred to the following fiscal year under Section 7(b) of Act 111; (2) the PLRB erred in denying its motion to dismiss and/or stay the proceedings while the original petition for review was pending before the trial court; and (3) the PLRB erred in awarding simple interest at a rate of six percent on the back pay due the County Detectives under the award.

The County first claims that the PLRB erred in determining that the arbitration award required immediate implementation and could not be deferred to the following fiscal year under Section 7(b) of Act 111. More specifically, the County claims that the PLRB erred in determining that legislative action was not required for its implementation thereby permitting

deferral to the following fiscal year under Section 7(b).

As noted above, in this case, the PLRB adopted the following relevant facts as found by the Hearing Examiner: (1) the County's annual budget contains a contingency fund, designated Department 1094, for emergencies and underfunded expenses; (2) as a result of administrative requests, the County's fiscal services transferred $646,844.13.00 in 2003, $540,933.00 in 2004, and $211,090.00 through June of 2005 from the contingency fund; (3) when the County Commissioners passed the 2005 budget they included $150,000 in the discretionary contingency fund; and (4) the County's 2005 annual budget also included an unspent $200,000 for discretionary employee bonuses. These findings are amply supported by substantial evidence in the certified record of this case.[22] As a result, these findings

peal or other matter, the court ... shall transfer the record thereof to the proper court of this Commonwealth....

20. This Court's scope of review of a PLRB Final Order is limited to determining whether there was a violation of constitutional rights, whether an error of law was committed, or whether the PLRB's necessary findings are supported by substantial evidence. *Wilkes–Barre Township v. Pennsylvania Labor Relations Board*, 878 A.2d 977 (Pa.Cmwlth.2005); *Delaware County Lodge No. 27 v. Pennsylvania Labor Relations Board*, 694 A.2d 1142 (Pa. Cmwlth.1997). The PLRB's factual findings supported by substantial evidence are conclusive on appeal; however, legal conclusions are subject to judicial review. *Id.* Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

21. In the interest of clarity, we consolidate and reorder the claims raised by the County in this appeal.

22. The County's Director of Fiscal Services, Robert Noll, testified at the hearings before the Hearing Examiner in pertinent part, as follows:

Q. Okay. Now if you look at the last page, that's a department, 1094, which is designated as contingency. Can you tell me what department that is?

\* \* \*

[A.] And your question again?

\* \* \*

Q. What is that?
A. A contingency is an account that's established by the commissioners to cover unexpected expenditures through the course of the year.
Q. Okay. And I guess I would ask you, in this whole [exhibit] Union 3, at the last page of each one should be a copy of that department's budget. Could you just for the record tell us what it was in 2002, 2003, 2004 and then 2005?
A. [2002], the total contingency is $1,505,000....
[A.] 2003, was $1.2 million; 2004, $1.2 million; and in 2005, $150,000.

\* \* \*

Q. That was an 85 percent decline from the prior year, correct?
A. That is correct.

\* \* \*

Q. To follow up on that, when you're preparing the budget and you're aware that an

arbitration, a grievance arbitration is scheduled for the prison guard unit, you're aware of that months before it occurs, and don't you include that in the budget?

A. That would be a commissioner decision as to whether or not they—I'm not involved with that aspect. I'm a finance guy. And if—based on their decisions, something like that may or may not be incorporated in the budget.

Q. Okay. And when it's not, then they go to the contingency fund to pay for it?

A. If we have unexpected expenditures, that's what the contingency is set up to do.

\* \* \*

Q. On the next page is the 2004 contingency fund balances, and I notice that the first item is performance bonuses of $200,000.

A. That's correct.

Q. That is a bonus incentive program. We still have that this year. We set up a separate account for the performance bonus program. Instead of putting it in contingency, we knew that we were going to have this....

Q. Okay. And—

A. That's why you don't see that in 2005.

Q. Because it's been made a line item or—

A. Yes, sir.

\* \* \*

[HEARING EXAMINER]: From your experience, Mr. Noll, could the commissioners use some of this $200,000 that's in the fringe benefit for bonuses, could they use that for paying these awarded raises, in your opinion?

THE WITNESS: They would have to redirect—this money was budgeted specifically for performance bonuses and the commissioners would have the authority to change that....

Q. Okay. But as of today, that $200,000 is sitting there, hasn't been spent. Is that correct?

A. That's correct. It's actually disbursed in December of each year.

Q. And it could be moved from that line item to the district attorney's office through the use of a budget transfer request, signed off on by the commissioners?

A. The commissioners would have to approve that.

\* \* \*

Q. Okay, so you don't know what that was spent for?

A. It could be part of the $6,000 that was transferred to commissioners' initiative that's the last line item.

Q. What is the commissioners' initiative?

A. Commissioners' initiative is the account that is within the commissioners' budget where monies would be transferred into for them to make the expenditures for some of the contingency items.

Q. Okay. So you take it out of contingency and put it into commissioner initiatives?

A. Yes.

Q. So if the commissioners wanted the $72,000 to fund these two interest arbitration awards, they could send you a budget transfer request, take seventy-two out of the contingency and put it in the initiative account?

A. It would—if the commissioners approved something of that nature, it would be transferred directly out of the commissioners' account—or directly out of the contingency account and would be transferred into whatever appropriate wage and salary account would be—

Q. They would direct you to put it in?

A. That's correct.

\* \* \*

Q. Let's look at the 2003 memo. I guess at that time you were still, the performance bonuses were still being taken out of the contingency fund?

A. That's correct.

Q. And that year, the contingency fund was $1.2 million?

A. The contingency, yes.

Q. Okay. I just have a question, too. What happens—it shows that you spent a total of $777,000 out of the contingency fund and you had an unencumbered contingency fund of $429,000.

A. Yes, sir.

Q. What happens to that money?

A. That's unexpended money that goes into the reserve balance at the end of each year.

Q. Okay. Do you know what the reserve balance was at the end of 2004?

A. I think it was approximately $5 million.

\* \* \*

Q. Okay. Don't worry about the collective bargaining agreement. The end of 2004, you had $5 million left over in your budget?

A. Yes, sir.

Q. Okay. And by unencumbered, that means what?

A. That money is a cash reserve that is utilized to balance the budget in the subsequent year....

Q. Okay. So until that $5 million reserve is spent, there's no need for the commis-

are conclusive on appeal. *Delaware Coun-*

sioners to enact a new tax rate to increase the revenue?
A. That's correct.

\* \* \*

Q. What's your projected reserve for the 2005 fiscal year, today?
A. $6 million.

\* \* \*

Q. Now, I guess given the number of these, you would agree, wouldn't you, that transfer requests are made quite often throughout the fiscal year?
A. They're made when a department needs to make a purchase out of a line item and there's not enough money to generate a purchase order. Then a budget transfer is requested. It's generated by the department, submitted to fiscal services.
Q. Okay. But as we learned this morning, it's also generated by the commissioners as well.
A. Any department could submit a budget transfer request.
Q. Okay. And it's always done on this form that's designated, Lycoming County budget transfer request?
A. Yes.
Q. Do you have any idea how many requests were made say in 2003 or 2004?
A. No. I never counted them.
Q. Okay. Well, if you go to the last page here, if these are all of them, you produced 369 during that period.
A. Over three years, two and a half years.
Q. Two and a half years, a little less than two and a half years. So is that fairly typical, you think there's over a hundred a year?
A. Yes.
Q. Do you know the amount of money that was transferred as a result of these requests in 2003?
A. No.
Q. Would you be surprised if it totaled $646,844.13?
A. No. There's a variety of reasons and a variety of requests.
Q. Okay. How about in 2004? Our summation of these numbers show that it was $540,933 transferred. Do you think that occurred?
A. Yes.
Q. And in this year, it looks like as of May 13th, there was $211,091 transferred.
A. Okay. I have no reason to doubt that.
N.T. at 44–45, 52, 54–55, 57–58, 64–65, 69–70, 70–71, 72, 84–85.

In addition, the County's Chairman of the Board of Commissioners, Rebecca Burke, testified in pertinent part, as follows:
Q. And there is money currently in the contingency account that can cover the wages, the contractual wage rates that are called for in the [ADAs' and APDs'] contract as well as the detectives' contract; isn't that correct?
A. We're not disputing paying—. . . .
[A.] Possibly. . . .
Q. Why possibly?
A. There is money there. I don't dispute that there's not money to pay them. That is not what is at issue.
Q. Okay. So it's, you don't want to pay them more than what you've already agreed—you know, more than the two percent and 2.5 percent—
A. I did not say that—
Q. —that you've given everybody else?
A. I did not say that.
Q. But why are you then not—I mean, you're not paying, you agree.
A. Because it's obvious, we have pending litigation.
Q. Well, at the time you decided not to pay them, there was no pending litigation.
A. There is today.
Q. Okay. But I'm talking, when you decided not to pay them at your January 6th commissioners' meeting, I believe, for the ADAs, and the February meeting for the detectives, there was no litigation pending; isn't that correct?
A. Nor was there any money at that time.
Q. There was $150,000 in the contingency fund at that time.
A. Correct, at the discretion of the commissioners to utilize, and obviously a majority of the commissioners did not choose to do that.
Q. Okay. But at the discretion of the commissioners, the majority could have decided at both the January and February meetings to take the money—
A. But it—
Q. —from the contingency fund—let me finish, okay—could have decided to take the money from the contingency fund and fulfill the terms of both those collective bargaining agreements; isn't that correct?
A. Could have, yes.
Q. And you made a decision not to?
A. We unanimously made a decision not to.
*Id.* at 239–241.

*ty Lodge No. 27.* Moreover, the findings support the PLRB's conclusion that the implementation of the arbitration award did not require legislative action under Section 7(b) of Act 111.

In *County of Allegheny v. Allegheny Court Association of Professional Employees,* 517 Pa. 505, 539 A.2d 348 (1988), the Allegheny County Commissioners engaged in collective bargaining negotiations with a union representing a unit composed of professional employees of the Allegheny County Court of Common Pleas. After the parties reached an impasse in the negotiation, the matter was referred to a panel of arbitrators pursuant to Section 805 of Act 195. The panel issued an award setting forth a collective bargaining agreement which, *inter alia,* increased the salary scale and awarded a one-time cash bonus of $1,200.00 for all of the employees in the unit.

The Allegheny County Commissioners petitioned to review the award in the Court of Common Pleas, and passed a resolution declaring that implementation of the award would require a legislative enactment and was, therefore, only advisory

under Section 805 of Act 195.[23],[24] Ultimately, the Court of Common Pleas issued an opinion and order in which it determined, *inter alia,* that the Allegheny County Commissioners had not met their burden of proving that the implementation of the award required a legislative enactment under Section 805. As a result, the court held that the award was binding and ordered the Allegheny County Commissioners to implement its salary and bonus provisions.

On appeal, this Court affirmed that portion of the lower court's order affirming the award's salary and bonus provisions and ordering the Allegheny County Commissioners to implement those provisions. The Pennsylvania Supreme Court granted allowance of appeal to

[d]elineate the meaning of "legislative enactment" so as to differentiate those arbitration awards that are binding upon public employers and employees under section 805 from those that are advisory only. Specifically, we must determine whether an arbitration award increasing the salaries and awarding a one-time

**23.** 43 P.S. § 1101.805. Section 805 of Act 195 provides, in pertinent part:

Notwithstanding any other provisions of this act where representatives of ... units of employes directly involved with and necessary to the functioning of the courts of this Commonwealth have reached an impasse in collective bargaining and mediation ... has not resolved the dispute, the impasse shall be submitted to a panel of arbitrators whose decision shall be final and binding upon both parties with the proviso that the decisions of the arbitrators which would require legislative enactment to be effective shall be considered advisory only.

**24.** Although not controlling, it can be useful to consider the definition of like terms contained in Act 195 to the analysis of terms contained in Act 111. *See, e.g., Chartiers*

*Township v. Pennsylvania Labor Relations Board,* 98 Pa.Cmwlth. 44, 510 A.2d 884, 885–886 (1986), *petition for allowance of appeal denied,* 514 Pa. 620, 521 A.2d 934 (1987) ("[A]ct 111, the statute which grants to police and fire officers the right to bargain collectively, provides no guidance for determining what criteria establish managerial status because the Act does not define that term. However, [Act 195] does contain a definition of 'management level employe'. Although our Supreme Court in *Chirico v. Board of Supervisors for Newton Township,* 504 Pa. 71, 470 A.2d 470 (1983), declared that Act 111 is not to be read in pari materia with [Act 195] because [Act 195] expressly excludes police and fire officers from its coverage, nevertheless judicial consideration can benefit from the definition of managerial employee contained in [Act 195], which the legislature applied to a different category of public employees.").

bonus to the court employees represented by appellee herein required "legislative enactment to be effective...."

*County of Allegheny*, 517 Pa. at 508, 539 A.2d at 350.

In defining the parameters of what constitutes a legislative enactment under Section 805 of Act 195, the Supreme Court quoted the following from the opinion of the Court of Common Pleas of Allegheny County, in pertinent part:

> [In] November and December of each year, budget requests are made from the various departments or agencies in the county, which are compiled into the official county budget. The rate of taxation is then set in order to provide funding for items in the budget. Thus, it is this process whereby "taxes are levied" and "funds are appropriated".

> During the administration of the county government, changes will be made from one line item of the budget to another. According to the witnesses and the evidence presented by [the County], the Commissioners can independently by majority vote increase or decrease the amount of money allotted to any given line item. The money transferred into a line item generally comes from some other line item with excess or surplus funds.[25]

> [* * *]

We assume that any arbitration award which grants increased wages to public employees will require such a line item transfer within the political subdivision's budget. Thus, to find that such a transfer constitutes a legislative enactment produces the exact absurd result which the courts of this Commonwealth have struggled to avoid—that of emasculating the value of arbitration as a tool to solve conflicts in labor relations, and overriding the legislature's clear intent that arbitration awards be final and binding on the parties. Rather, we believe that the intended result of the legislature in enacting [Act 195] will be honored and effectuated by considering the budget adoption process as legislative enactment, and the subsequent transfer of funds from one line item to another to constitute the ordinary administration of municipal affairs.

* * *

Of course, where the implementation of an arbitration award would require the local governmental body to levy further taxes in order to have funds to appropriate to such a line item, then the legislature cannot constitutionally be forced to take such action.... *However, where there is money available in the government's general fund or from other items with surplus funds, we hold that in order to effectuate the policy and intent of [Act 195[26]], such money must administratively be*

---

**25.** Section 1784 of the County Code, Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. § 1784, provides, in pertinent part, that "[t]he commissioners may at any time, by resolution, make supplemental appropriations for any lawful purpose from any funds on hand.... The commissioners may authorize the transfer of any unencumbered balance of any appropriation item or any portion thereof...."

**26.** Relevant to the instant appeal, this Court has previously noted that "[t]he purpose of Act 111 was to insure appropriate pay increases and additional fringe benefits to policemen and firemen by collective bargaining, while guaranteeing, through the compulsory and binding arbitration provision, that these critical employees would not find it necessary to resort to strikes. The resultant danger to the health and safety of the community is obvious." *Allegheny County v. Hartshorn*, 9 Pa.Cmwlth. 132, 304 A.2d 716, 719 (1973), *aff'd*, 460 Pa. 560, 333 A.2d 914 (1975).

*transferred to fund a legally binding arbitration award.*

*Id.* at 514–516, 539 A.2d at 353–354 (emphasis added).

Based on the foregoing, the Supreme Court concluded:

It is clear that county commissioners perform complex, multiple roles of mixed legislative, executive and administrative functions. It also seems clear that ... some degree of "legislative action" is involved in transferring funds from one county account (or "line item") to another. However, to equate such "legislative action" with "required legislative enactment" would, as [the lower court] suggests, completely emasculate Act 195 and render all arbitration awards dealing with fiscal matters advisory. This we will not do.

*Id.* at 517, 539 A.2d at 354–355.

The opinion of this Court in *Tate v. Antosh*, 3 Pa.Cmwlth. 144, 281 A.2d 192 (1971), should also be noted. In that case, through collective bargaining, the City of Philadelphia agreed to pay disability benefits to its employees who were or became eligible as a result of a qualifying service-related injury. For the fiscal year of July 1, 1970 to June 30, 1971, the City appropriated $2,725,000.00 to pay these benefits. On January 15, 1971, the City's personnel director notified the recipients that payments would cease when the appropriated funds were exhausted. The recipients filed suit in the court of common pleas seeking, *inter alia*, to compel the City's mayor and council to appropriate sufficient funds for these benefits. Following hearing, the trial court issued an order enjoining the defendants from discontinuing the payments and directing them to appropriate sufficient funds to finance the payments.

On further appeal, regarding the council's duty to appropriate funds to continue the disability benefits, this Court stated the following, in pertinent part:

In these appeals we are confronted with the question of whether the City of Philadelphia may avoid payment of [disability] benefits which it agreed to pay to its employees by mere failure of its legislative branch, the City Council, to appropriate sufficient funds to cover its liabilities under the regulation for fiscal 1970–71. Clearly, we are dealing with a "bargained for" benefit on the part of the public employees bringing these suits and we must examine the origin and nature of the employer-employee agreements creating these benefits and the resulting legally enforceable duty of the City of Philadelphia to provide such benefits.

* * *

[Act 111] extends to policemen and firemen throughout the Commonwealth the right to bargain collectively with their government employer. This act implements Article III, Section 31 of the Pennsylvania Constitution ... which generally prohibits the delegation of legislative power. As amended in 1968, however, it further provides:

"Notwithstanding the foregoing limitation or any other provision of the Constitution, the General Assembly may enact laws which provide that the findings of panels and commissions [...] selected and acting in accordance with law for [...] collective bargaining between policemen and firemen and their public employers shall be binding upon all parties and shall constitute a mandate to the head of the political subdivision which is the employer, [...] with respect to matters which can be remedied by administrative action, and to the lawmaking body of such political subdivision [...]with respect to matters which re-

quire legislative action, to take the action necessary to carry out such findings."

Section 7 of [Act 111], 43 P.S. § 217.7 contains identical language.

\* \* \*

The City of Philadelphia and all political subdivisions were mandated by the Constitution to carry into effect any arbitration award issued by a board " \* \* selected and acting in accordance with law \* \* \* ". It is undisputed that both the policemen and the firemen here involved were parties to binding arbitration awards as to their labor agreements with the City. These arbitration awards constitute the "findings of panels and commissions" contemplated by Article III, Section 31, *supra.* These awards include all the terms either resolved by the arbitration panel and specifically set forth or previously agreed upon by amicable negotiation and incorporated by reference.

[The disability benefit] was a previously agreed upon term which was not altered or adjusted by the specific resolutions in each award and was fully within the contemplation by the parties to the award during negotiation and arbitration. Because [the disability benefit] was part of the labor agreement and therefore a necessary condition precedent to compliance by the parties to the award, the City of Philadelphia is bound by the award to continue [the disability benefit] payments.

Simply because City Council refused to appropriate sufficient funds to effectuate payment, the City as a public employer is not relieved of its duty to follow the mandate of the arbitration panel. The appropriation of funds does not involve the performance of any illegal act on the part of the City. Unquestionably the City has the power to make appropriations for all lawful purposes as defined in its Home Rule Charter. The City can lawfully make the necessary appropriation and, where it has a mandatory duty to do so pursuant to a valid arbitration award, a court may order that duty to be performed.

*Tate,* 281 A.2d at 197–198, 198–199 (footnotes omitted).

In sum, this Court stated:

We conclude that the City of Philadelphia has a judicially enforceable duty to its uniformed ... employees to pay those employees the ... disability benefits to which they became entitled during the fiscal year 1970–1971, for which benefits they have not been paid, and it must appropriate sufficient funds to perform this duty notwithstanding the exhaustion of the appropriation for such purpose in its 1970–1971 budget....

*Id.* at 201. *See also Washington Arbitration Case,* 436 Pa. 168, 177, 259 A.2d 437, 442 (1969) ("[T]he essence of our decision is that an arbitration award may only require a public employer to do that which it could do voluntarily. We emphasize that this does *not* mean that a public employer may hide behind self-imposed legal restrictions. An arbitration award which deals only with proper terms and conditions of employment serves as a mandate to the legislative branch of the public employer, and if the terms of the award require affirmative action on the part of the Legislature, they must take such action if it is within their power to do so.") (emphasis in original).

In the instant case, the certified record supports the PLRB's finding that adequate funds could have been transferred by the County's Commissioners from the contingency fund to pay the salary increases for the County Detectives mandated by the award, and that the Commissioners merely chose not to implement the award in spite of the demonstrated availability of these

funds. In addition, pursuant to County of Allegheny, the PLRB properly found that the Commissioners' interdepartmental transfer of such readily available funds would not have constituted legislative action under Section 7(b) of Act 111. *See County of Allegheny*, 517 Pa. at 514–516, 539 A.2d at 353–354 ("[W]here there is money available in the government's general fund or from other items with surplus funds, we hold that in order to effectuate the policy and intent of [Act 195] such money must administratively be transferred to fund a legally binding arbitration award.").[27] Moreover, pursuant to *Tate*, the PLRB properly concluded that the County should be compelled to comply with the mandatory provisions of the award. *See Tate*, 281 A.2d at 199 ("[S]imply because City Council refused to appropriate sufficient funds to effectuate payment, the City as a public employer is not relieved of its duty to follow the mandate of the arbitration panel. . . . The City can lawfully make the necessary appropriation and, where it has a mandatory duty to do so pursuant to a valid arbitration award, a court may order that duty to be performed."). As a result, the PLRB did not err in determining that the instant award must be immediately implemented under Section 7 of Act 111, and the County's assertion to the contrary is patently without merit.[28],[29]

27. In its appellate brief, the County principally relies on the opinions of this Court in *Yost v. McKnight*, 865 A.2d 979 (Pa.Cmwlth.2005), *Butler County Correctional Officers v. Butler County Commissioners*, 95 Pa.Cmwlth. 471, 505 A.2d 1110 (1986) and *County of Lehigh v. American Federation of State, County, and Municipal Employees, District Council 88, Local 543*, 95 Pa.Cmwlth. 486, 505 A.2d 1104 (1986) in support of this claim. *See* Brief in Support of Appeal at 17–25. However, in *Yost*, this Court addressed the authority of a district attorney, under the relevant provisions of the County Code, to enter into a contract to hire a "temporary special assistant district attorney" and to commit county funds for his or her compensation. Thus, our opinion in *Yost* is inapposite and it is in no way related to the provisions of Act 111 and the implementation of a binding interest arbitration award. In addition, it must be noted that the opinions of this Court in *Butler County Correctional Officers* and County of Lehigh predate the Supreme Court opinion in County of Allegheny. Moreover, and more importantly, we are compelled to follow the dictates of the Supreme Court in County of Allegheny even if we were to accept the County's assertion that the foregoing opinions of this Court would compel a different result in this case. *See, e.g., Nunez v. Redevelopment Authority of the City of Philadelphia*, 147 Pa.Cmwlth. 577, 609 A.2d 207, 209 (1992) ("[A]s an intermediate appellate court, we are bound by the opinions of the Supreme Court.").

28. In its appellate brief, the County also outlines how funds were not available from a number of other sources in the County budget, or how the Commissioners could not transfer funds from these other sources without legislative action. However, as PLRB noted in its Final Order, "[a]s the amount of money necessary to fund the interest arbitration award is admittedly available in the [contingency fund of the] County budget, it is irrelevant for purposes of finding an unfair labor practice, that the money could have also been obtained elsewhere. . . ." Final Order at 5. As a result, we will not address the other funds in the County's budget that may or may not have been available to implement the instant award as they did not form the basis upon which the PLRB issued its Final Order.

29. As a corollary to this allegation of error, the County also claims that the trial court erred in affirming the PLRB's Final Order because there could be no finding of an unfair labor practice under Section 6 of the PLRA as implementation of the arbitration award could be deferred until the following fiscal year under Section 7(b) of Act 111. However, as noted by the PLRB in its Final Order, "[w]e agree with the hearing examiner that the County's unlawful actions were inherently destructive of employe rights to amount to a violation of Section 6(1)(a) and (c) [of the PLRA] in accordance with the *Great Dane Trailers, Inc.*, [388 U.S. 26, 87 S.Ct. 1792 (1967)]. . . . No specific exception to this

The County next claims that the trial court erred in affirming the PLRB's Final Order because the Hearing Examiner erred in failing to grant the County's motion to dismiss and/or stay the proceedings while the County's original petitions for review of the awards were pending before the trial court. More specifically, the County contends that because it had filed the petitions in the trial court, the Hearing Examiner and the PLRB were without jurisdiction to consider the instant unfair labor practice charges and their exercise of this jurisdiction interfered with its right to appeal the arbitration award.

■ As noted above, the instant matter was initiated by the Union's filing of unfair labor practice charges in which it was alleged, *inter alia,* that the County had violated Section 6(1)(a), (c) and (e) of the PLRA by failing to implement the economic aspects of the arbitration award. Section 8(a) of the PLRA specifically provides:

(a) The [PLRB] is empowered, as hereinafter provided, to prevent any other person from engaging in any unfair labor practice listed in section six of this act. This power shall be exclusive and shall not be affected by any other means of adjustment or prevention that have been or may be established by agreement, law, or otherwise.

43 P.S. § 211.8(a).

In *Barron v. City of Philadelphia,* 85 Pa.Cmwlth. 182, 481 A.2d 379 (1984), an interest arbitration award was rendered on June 29, 1982 which resulted in a collective bargaining agreement between the City of Philadelphia and a union representing the City's firefighters. The agreement required, *inter alia,* that all uniformed members of the City's fire department who did not join the union to pay a service fee to the union to defray their share of the costs to administer the agreement with the City. In April of 1983, a fire battalion chief filed a complaint in equity in the court of common pleas to enjoin the implementation of this "agency shop clause" because it constituted an unfair labor practice under Section 6 of the PLRA, and because the clause violated the relevant provisions of Act 111, the Philadelphia Home Rule Charter, the Philadelphia Code, the Judicial Code [30], and the Wage Payment and Collection Law.[31] Both the City and the union, as an intervening defendant, filed preliminary objections to the complaint. On June 8, 1983, the trial court issued an order sustaining the preliminary objections and dis-

---

conclusion has been raised by the County and is therefore waived in these exceptions, and for further appellate review. Board Rules and Regulations § 95.98(a)(3)." Final Order at 3–4 n. 6. We concur in the PLRB's disposition of this claim. *See, e.g.,* Pa.R.A.P. 1551(a) ("[N]o question shall be heard or considered by the court which was not raised before the government unit [with exceptions not relevant here]...."); *Borough of Geistown v. Pennsylvania Labor Relations Board,* 679 A.2d 1330, 1333 (Pa.Cmwlth.1996), *petition for allowance of appeal denied,* 547 Pa. 759, 692 A.2d 568 (1997) ("[T]he Borough asserts that it did not commit an unfair labor practice by not proceeding to interest arbitration because it exercised its legislative power to abolish its police department and subcontract its police services. This issue, however, was not raised in the Borough's exceptions to the hearing examiner's proposed decision. Therefore, we hold that it is waived. 34 Pa. Code § 95.98(a)(3)...."). *See also Teamsters Local Union 77 v. Pennsylvania Labor Relations Board,* 89 Pa.Cmwlth. 433, 492 A.2d 782, 785 (1985) ("[I]t is an established principle of law that the *only* issues which the reviewing Court may address, on appeal from an administrative agency, are those which have been raised in exceptions to the agency ....") (emphasis in original and citation omitted).

**30.** 42 Pa.C.S. §§ 101 – 9909.

**31.** Act of July 14, 1961, P.L. 637, *as amended,* 43 P.S. §§ 260.1 – 260.12.

missing the complaint, on the basis that it did not possess jurisdiction because the unfair labor practice charge was a matter within the exclusive jurisdiction of the PLRB. The fire battalion chief appealed the trial court's order to this Court.

In disposing of the appeal, this Court stated the following, in pertinent part:

> In his appeal, Appellant argues that the allegations contained in the complaint regarding the manner in which the agency shop clause in the collective bargaining agreement violates both Commonwealth and City law are such that there is subject matter jurisdiction in the court of common pleas. With respect to the unfair labor practice charge, we disagree. It is well settled that the PLRB has exclusive jurisdiction to adjudicate unfair labor practice charges arising under the PLRA[pursuant to Section 8 of the PLRA]. And, whereas the unfair labor practice charge in the instant matter does not emanate from a bargaining impasse which would be subject to the arbitration provisions of Act 111, we read Act 111 to be *in pari materia* with the PLRA. Accordingly, the determination that the PLRB possessed exclusive original jurisdiction

over the unfair labor practice charge in the case at bar was correct.

> This conclusion does not, however, terminate this matter. Appellant has raised a number of other statutes and ordinances separate and apart from the PLRA as being in conflict with the agency shop clause herein. The court of common pleas does have jurisdiction to resolve disputes between the parties arising under an existing collective bargaining agreement under Act 111 absent an arbitration clause for such in the agreement or a mutual revocation of such a clause. It also possesses jurisdiction to ascertain whether a provision of a collective bargaining agreement resulting from interest arbitration under Act 111, such as that herein, is in conflict with controlling law and hence, invalid. We, therefore, are constrained to hold that dismissal of Appellant's complaint was premature at this time and we remand this matter to the court of common pleas so that it may address the outstanding preliminary objections of the defendants as they pertain to the remaining charges of Appellant's complaint.

*Barron,* 481 A.2d at 381 (citations omitted).[32]

32. *See also Hollinger v. Department of Public Welfare,* 469 Pa. 358, 365, 365 A.2d 1245, 1248–1249 n. 10 (1976) ("[T]he starting point in a consideration of whether the PLRB has original jurisdiction of a dispute between public employes and their employer (or between such employes and their collective bargaining representative) must be to ascertain whether the remedy sought is redress of an unfair labor practice. If it is, the [PLRB] is vested with exclusive original jurisdiction by Section 1301 of [Act 195], 43 P.S. § 1101.1301 (Supp. 1976).... This rule does not, of course, divest a court of jurisdiction to entertain suits for *breach of contract* merely because the alleged breach may arguably be an unfair labor practice.") (emphasis in original and footnote and citations omitted); *Philadelphia Housing Authority v. Pennsylvania Labor Relations Board,* 75 Pa.Cmwlth. 199, 461 A.2d 649, 650–651 (1983) ("[W]hat proves fatal to [the employer]'s argument is the fact that the PLRB in this case was not reviewing an arbitration award, but rather was ruling upon an entirely separate proceeding; the unfair labor practice charge brought by the employes ... against [the employer]. Solely because there existed a factual determination relevant to both the arbitration and the unfair practice proceedings, does not render the unfair practice proceedings a review of the arbitrator's decision. The difficulties [the employer] might have had in reconciling the arbitrator's award with the PLRB's resolution of the unfair practice charged, cannot take precedence over Section 1301 of [Act 195], 43 P.S. § 1101.1301, which grants the PLRB exclu-

Thus, it is clear that the Hearing Examiner and the PLRB possessed jurisdiction to dispose of the instant unfair labor practice charges, and the ultimate determination of whether the County violated Section 6(1)(a), (c) and (e) of the PLRA, while the appeals of the awards were pending before the trial court. *Id.* This is particularly so where, as here, the trial court specifically denied the County's motion for a stay/supersedeas of these unfair labor practice proceedings before the PLRB. In short, the County's assertion that the Hearing Examiner and the PLRB were without jurisdiction to consider the instant unfair labor practice charges while the appeals were pending before the trial court is without merit.

■ Finally, the County claims that the trial court erred in affirming the PLRB's Final Order because the PLRB erred in awarding simple interest at a rate of six percent on the back pay due the County Detectives under the arbitration award. Specifically, the County asserts that the PLRA does not empower the PLRB to impose interest or any other civil penalty on a public employer.

■ In pertinent part, Section 8(c) of the PLRA specifically empowers the PLRB "[t]o take such reasonable affirmative action ... as will effectuate the policies of this act...." 43 P.S. § 211.8(c). As this Court has previously noted, Section 8(c) grants the PLRB broad remedial power to effectuate the policies of the PLRA. *Plumstead Township v. Pennsylvania Labor Relations Board,* 713 A.2d 730 (Pa. Cmwlth.1998). This Court will affirm a remedy crafted by the PLRB so long as it is reasonable. *Id.*

In addition, Section 8(c) specifically empowers the PLRB to make an employee whole for lost wages and benefits as a

remedy for an unfair labor practice under the PLRA and Act 111. *See Id.,* 713 A.2d at 737 ("[I]n sum, the Township's challenge to the PLRB's 'make whole' directive is unwarranted. The PLRB's order that the Township 'make all bargaining unit members whole for any monetary losses suffered' is in the purest sense remedial and not punitive. *See [Appeal of Cumberland Valley School District,* 483 Pa. 134, 394 A.2d 946 (1978)].* In fact, the PLRB's final order directs no more than the usual and customary remedy imposed by the PLRB as a consequence of an employer taking unilateral action in violation of its collective bargaining obligation. Accordingly, we conclude that the PLRB's order is proper in that it is reasonable, remedial in nature and furthers the PLRA's policy of promoting mutual resolution of labor disputes....").

Moreover, "[i]nterest on back pay awards has consistently been awarded under the [National Labor Relations Act (NLRA), 29 U.S.C. §§ 151–169]. *E.E.O.C. v. Guardian Pools, Inc.,* 828 F.2d 1507, 1512 (11th Cir.1987) (citing *Winn–Dixie Stores, Inc. v. NLRB,* 413 F.2d 1008, 1010 (5th Cir.1969))." *Frazier v. Southeastern Pennsylvania Transportation Authority,* 814 F.Supp. 11, 13 (E.D.Pa.1993). This is because the award of interest is within the remedial powers of the National Labor Relations Board. *National Labor Relations Board v. General Time Corporation,* 650 F.2d 872 (7th Cir.1981). The purpose of the award of interest is to put the wronged employees in the position they would have been but for the unfair labor practice. *Id.*

■ Likewise, the PLRB has routinely granted interest on back pay awards in cases in which it has been demonstrated that an employer has engaged in unfair

sive jurisdiction to hear unfair labor practice charges.") (footnotes omitted).

labor practices under the PLRA and Act 111. *See, e.g., FOP, Flood City Lodge No. 86 v. City of Johnstown,* Docket No. PF–C–90–135–W (Final Order, 1991) at 2–3 ("[T]he authority of [the PLRB] is limited to remedial actions and does not include the imposition of penalties. The appropriate remedy in an unfair labor practice case is a matter of [PLRB] discretion and the [PLRB] exercises broad discretion to issue appropriate remedial orders pursuant to Section 8 of the [PLRA]. Section 8 provides the [PLRB] with broad authority to fashion appropriate remedies 'as will effectuate the policies of this act.' 43 P.S. § 211.8. Our authority under Section 8 includes direction to employers to pay back pay or decline to direct back pay as will effectuate the policies of the [PLRA]. *Commonwealth of Pennsylvania (Human Relations Commission),* 22 PPER 22131 (Final Order, 1991).... Both [the PLRB] and the NLRB have issued back pay awards which include interest. *See, e.g., AFSCME, Council 88 v. Reading,* 19 PPER 19218 (Proposed Decision and Order, 1988), 20 PPER 20069 (Final Order, 1989), *aff'd,* [130 Pa.Cmwlth. 397, 568 A.2d 715 (1989)]; *Braymer v. Beaver Valley Intermediate Unit,* 20 PPER 20108 (Proposed Decision and Order, 1989); *Isis Plumbing and Heating Company,* 138 NLRB 716, 51 LRRM 1122 (1962), *rev'd on other grounds,* 322 F.2d 913 (9th Cir. 1963); *New Horizons for the Retarded, Inc.,* 283 NLRB No. 181, 125 LLRM 1177 (1987).... While the [PLRA] does not expressly provide interest on back pay awards, [the PLRB] has determined that 'the purposes of the [PLRA] would best be

served by requiring the employer to pay interest.' *Golden Cab Company,* 10 PPER 10297 at 447 (Final Order, 1979). We will therefore not disturb the hearing examiner's correct decision to award interest on the affected employes' back pay.").

In addition, this Court has specifically recognized that the award of interest may be appropriate in proceedings on a petition to enforce a grievance arbitration award instituted pursuant to the provisions of the Uniform Arbitration Act.[33] *See Borough of Dunmore v. Dunmore Police Department,* 106 Pa.Cmwlth. 461, 526 A.2d 1250, 1253 (1987), *petition for allowance of appeal denied,* 518 Pa. 614, 540 A.2d 535 (1988) ("[S]ection 7316 of the [Uniform Arbitration Act] provides for the entry of a judgment or decree upon the granting of a petition to confirm, modify or correct. 42 Pa.C.S. § 7316. '[A] judgment for a specific sum of money shall bear interest at the lawful rate from the date of the verdict or award, or from the date of the judgment, if the judgment is not entered upon a verdict or award.' [Section 8101 of the Judicial Code,] 42 Pa.C.S. § 8101. Therefore, the imposition of interest from the date of confirmation would be proper....").[34]

Likewise, the Pennsylvania Supreme Court has recognized that interest may be awarded by an arbitrator as a remedial measure for an employer's violation of a collective bargaining agreement executed pursuant to the provisions of Act 195. *See Pennsylvania State Education Association with Pennsylvania School Service Personnel/PSEA v. Appalachia Intermediate Unit 08,* 505 Pa. 1, 7, 476 A.2d 360, 363

---

33. 42 Pa.C.S. §§ 7301 – 7362.

34. *See also City of Scranton v. International Association of Machinists and Aerospace Workers Lodge 2305, AFL–CIO,* 95 Pa.Cmwlth. 540, 505 A.2d 1121, 1124 (1986) ("[I]n support of its argument that it is entitled to interest on the award, the union cites Section 8101 of the [Judicial Code].... The City concedes, and we agree, that the union is entitled to interest from the date the arbitrator entered his award, but only judgment for a specific sum can bear interest....").

(1984) ("[C]ommonwealth Court concluded that the arbitrator had broad power to fashion a remedy, and such power included the award of interest. It found the award of interest to be reasonable in light of equities of the case. In the instant case, the arbitrator took note of the delay and the fact that the delay was largely attributable to [the employer]'s initial refusal to arbitrate. We find that the arbitrator's decision to award interest was reasonable in light of the equities and within his power.").

Thus, contrary to the County's assertion, the PLRB's award of simple interest on the back pay due the County Detectives under the arbitration award is within the broad remedial powers conferred upon the PLRB under Section 8 of the PLRA. Because "[t]he PLRB's order is proper in that it is reasonable, remedial in nature and furthers the PLRA's policy of promoting mutual resolution of labor disputes ...", *Plumstead Township*, 713 A.2d at 737, it will be affirmed.[35]

Accordingly, the order of the PLRB is affirmed.

### ORDER

AND NOW, this 3rd day of December, 2007, the order of the Pennsylvania Labor Relations Board, dated February 26, 2006 at No. PF–C–05–50–E, is AFFIRMED.

---

**35.** As a corollary to the allegation of error, the County also contends that "[s]ince the award of back pay is unliquidated, the additional award of interest is not proper...." Brief in Support of Appeal at 32. However, in its response to the Union's exceptions that was filed with the PLRB, the County merely alleged that "[t]he [PLRB] has the discretion to issue orders in a manner to effectuate the policies of the [PERA]. The granting of interest on the financial portion of the Proposed Decision and Order would penalize the County for filing its Petition for Review of the interest arbitration award in this matter. Therefore, the granting of interest would not effectuate the objectives of the [PERA]." Lycoming County's Response to Exceptions of Teamsters Local 764 at 1–2 (citations omit-

ted). As a result, as noted above, the PLRB did not address the propriety of the award of interest because the back pay award is unliquidated. *See* Final Order at 7–8. Thus, the PLRB was never presented with, and never addressed, the foregoing claim. Accordingly, this issue will not be addressed for the first time by this Court in this appeal. Pa.R.A.P. 1551(a); *Teamsters Local Union 77. See also* Section 95.98(a)(3) of the PLRB's regulations, 34 Pa.Code § 95.98(a)(3) ("[A]n exception not specifically raised shall be waived."); *Borough of Geistown*, 679 A.2d at 1333 ("[T]his issue, however, was not raised in the Borough's exceptions to the hearing examiner's proposed decision. Therefore, we hold that it is waived.").